**TRI–STATE BANCORPORATION, INC., Petitioner,**

v.

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent.**

**No. 74–1957.**

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1975.

Decided Oct. 24, 1975.

Rehearing and Rehearing En Banc Denied Dec. 15, 1975.

Thomas A. Callaghan, Jr., Washington, D. C., for petitioner.

Irving Jaffe, Acting Asst. Atty. Gen., Donald Etra, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., for respondent.

Before PELL and SPRECHER, Circuit Judges, and EAST, Senior District Judge.*

PELL, Circuit Judge.

This is a petition to set aside an order denying petitioner's application for approval of formation of a bank holding company. The Bank Holding Company Act, as amended, (BHC Act) (12 U.S.C. § 1841 *et seq.*) provides that certain applications made to the Board of Governors of the Federal Reserve System (Fed) under the BHC Act "shall be deemed to have been granted" should the Fed not rule on the application within 91 days. The BHC Act provides that the 91-day period "begins on the date of submission to the Board [Fed] of the complete record on that application." 12 U.S.C. § 1842(b).[1] The principal issue in

---

* Senior District Judge William G. East of the United States District Court for the District of Oregon is sitting by designation.

1. Section 1842(b) provides:

"Upon receiving from a company any application for approval under this section, the Board shall give notice to the Comptroller of the Currency, if the applicant company or any bank the voting shares or assets of which are sought to be acquired is a national banking association or a District bank, or to the appropriate supervisory authority of the interested State, if the applicant company or any bank the voting shares or assets of which are sought to be acquired is a State bank, and shall allow thirty days within which the views and recommendations of the Comptroller of the Currency or the State supervisory authority, as the case may be, may be submitted. If the Comptroller of the Currency or the State supervisory authority so notified by the Board disapproves the application in writing within said thirty days, the Board shall forthwith give written notice of that fact to the applicant. Within three

the present proceedings is the proper construction of the statutory phrase "complete record."

On January 4, 1974, petitioner filed an application for prior approval of becoming a bank holding company. The initial stages of processing the application were handled by the Federal Reserve Bank of Chicago (Bank) in accord with regulations promulgated by the Fed. 12 C.F.R. §§ 225.3, 262.3(c) (1975). During the next six months petitioner was notified that the application was legally and informationally sufficient for processing; comments were requested from appropriate parties,[2] notices were published; supplementary material was filed by petitioner; and the Bank made its initial recommendation to the Fed. Additional material was sent to the Bank, but on July 17 a Bank official advised petitioner that its staff would recommend denial of the application. Petitioner had requested notification if denial was likely so that it could withdraw its application. On July 18 petitioner wrote the Bank, with a copy to the Fed requesting that the amended application be considered and attempting to refute some of the criticisms raised by the Bank staff. On July 23 the letter was stamped "received" by the Fed, and on August 1 receipt of the letter was acknowledged by the Bank. In accordance with regulations, the Fed's staff then prepared a recommendation, which was submitted to the Fed on September 11. See 12 C.F.R. § 262.3(c). On October 25 the application was denied. The petition for judicial review followed.

Petitioner argues that the submission of the complete record was accomplished when the July 18 letter was mailed or, at the latest, when it was received by the Fed. In either case, it is contended that the application should be deemed approved as a matter of law. The Fed argues that the staff report is an important part of the record and that the 91-day period did not begin to run until it was prepared. In the alternative it argues that the record was not complete until notice was sent indicating receipt of the July 18 letter. This notice, according to the Fed, was important in this case because petitioner consistently reserved the right to withdraw its application.[3] Under either interpretation proposed by the Fed, the application was timely denied. To the best of our knowledge, this is a case of first impression.

The time limit in the BHC Act resulted from the 1970 amendments. The House Report on the amendments indicates that the time limit was proposed because the Federal Reserve had been "unduly slow in rendering decisions on applications made." H.R.Rep.No.91–387, 91st Cong., 2d Sess. 13 (1970). The Fed cites testimony urging Congress to commence the 91-day period for acting at the date of filing the application, but this was not adopted. See Hearings before the Committee on Banking and Currency House of Representatives, 91st

days after giving such notice to the applicant, the Board shall notify in writing the applicant and the disapproving authority of the date for commencement of a hearing by it on such application. Any such hearing shall be commenced not less than ten nor more than thirty days after the Board has given written notice to the applicant of the action of the disapproving authority. The length of any such hearing shall be determined by the Board, but it shall afford all interested parties a reasonable opportunity to testify at such hearing. At the conclusion thereof, the Board shall by order grant or deny the application on the basis of the record made at such hearing. In the event of the failure of the Board to act on any application for approval under this section within the ninety-one-day period which begins on the date of submission to the Board of the complete record on that application, the application shall be deemed to have been granted."

2. The Commissioner of Banks of the State of Illinois notified the Board that no objection would be offered by that agency to the application.

3. In its letter of July 18, the petitioner, while expressing appreciation for the fact that the adverse information had been called to its attention and for the opportunity to withdraw the application, stated, "I wish to have the Board consider the full application."

Cong., 1st Sess., on H.R. 6778 (1969), pp. 1103, 1314. Both the Fed and petitioner cite testimony of J. Harvey Wilkinson, who testified on behalf of the Association of Registered Bank Holding Companies. He stated that the new chairman of the Federal Reserve Board had recognized the problem by administratively applying a 90-day time limit on all applications but that it was believed the mandate should be written into law. In response to a question regarding whether an application could be so complicated that the Fed could not meet the time limitation, Wilkinson testified that formal notice of receipt is not given until the application is "cleaned up" and that therefore the time does not begin to run until the Fed has it in clean form. He was then further questioned:

> "*Senator Bennett.* So, in fact, the Fed could not receive the application until it was ready to hand a decision. Is that what you are saying?
>
> *Mr. Wilkinson.* Until it was ready to investigate at the Board level and felt all they had to do was to deliberate and not hunt for additional facts and send it back." Hearings before the Committee on Banking and Currency, United States Senate, 91st Cong., 2d Sess. On Bills to Amend The Bank Holding Company Act of 1956 (1970), p. 961.

He also testified that the time limit on the Fed in the proposed Act was comparable to the limit on applications under the Savings and Loan Holding Company Act.[4]

The Savings and Loan Holding Company Act (S&LHC Act) provides, in relevant part: "The [Federal Savings and Loan Insurance] Corporation . . . shall render its decision within ninety days after submission to the [Federal Home Loan Bank] Board of the complete record on the application." 12 U.S.C. § 1730a(e)(1)(B). In *Fort Worth National Corporation v. Federal Savings and Loan Insurance Corporation*, 469 F.2d 47 (5th Cir. 1972), the Fifth Circuit interpreted the time limitation in the S&LHC Act as running from the time the staff completes processing the application and submits the final record to the Federal Home Loan Bank Board (FHLB Board). In so holding the court attached significance to two factors: First, the Senate version of the bill which became the S&LHC Act would have measured a 120-day time period from the date the application was received. This approach was rejected. The House version became law. Second, the court attached significance to the substitution of the word "Board" for "Corporation" in the limiting phrase. The court stated:

> "The substitution of the word 'Board' for 'Corporation' in the final version is equally significant. Although the Corporation receives and processes the application initially, the Board, as acting head of the Corporation, has final responsibility for approving applications. Congress intended the time period to commence when the Board, not the Corporation, has the application. This occurs only after the staff completes processing the application and submits the final record to the Board. *Id.* at 57–58.

The court went on to hold that, even if the time limit had run, the FHLB Board's order stood because the time limit in the act was not mandatory. The court stated that a statutory time limit was not mandatory "unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision." *Id.* at 58. The only remedy for failure to comply with a non-mandatory time limitation, according to the Fifth Circuit, is to seek a court order compelling the Corporation to act.

*Fort Worth National* is a poor analogy to the case at bar. The time limitation in the BHC Act is mandatory in the

---

4. We do not, as the Fed apparently does, read "similar" as meaning "identical" or "exactly alike." In the context of the testimony, it would appear that the witness was referring to a parallel aspect of similarity, what might be characterized as a homoiousian situation.

sense that the statute prescribes the effect of the Fed's failure to act, *i. e.*, the application is deemed approved. There is no dichotomy in the BHC Act similar to that between the Corporation and the FHLB Board in the S&LHC Act. The Fed attempts to minimize the significance of this distinction by arguing that the court held that the time began to run when the FHLB Board's staff submitted its report, not when the Corporation submitted its report to the Board. In effect this is an argument that the reasoning of the Fifth Circuit does not compel its conclusions. In any event it appears that the dichotomy, in part at least, motivated the Fifth Circuit's conclusion. The statute before us contains no similar dichotomy to motivate us.

Also, the historical argument in *Fort Worth National* was stronger because the petitioner was arguing that the time period should run from the time of filing its last amendment to its application. This was the approach rejected by Congress in both the S&LHC Act and the one at bar. No such argument is made in this case, although the Board attempts to characterize petitioner's argument as such. Petitioner contends that the time begins to run when the last material is submitted by an applicant or by *any agencies other than the Board; e. g.,* in this case, as noted above, comment was requested and received from the Commissioner of Banks of the State of Illinois. Although the BHC Act is silent as to any participation by the Bank in the application process, pursuant to regulation, 12 C.F.R. § 262.3(c), the Bank does conduct necessary preliminary investigation and then "reports the relevant facts, with its recommendation to the" Fed. The Fed staff would appear not to be precluded from requesting the submission of additional relevant facts from any interested persons. The record indicates no further relevant facts were requested or received by the Fed in the present case subsequent to the receipt of the letter of July 18, 1974.

We hold that the 91-day period of § 1842(b) begins to run when the final material needed for the Fed's decision is received from the various interested sources outside of the Fed, which ordinarily would be the applicant and governmental agencies other than the Fed. The crucial date here is July 23. In our opinion, staff reports and recommendations of the Fed are no part of the "complete record" within the statutory contemplation. Such internal communications are merely a part of the decisional process in determining the result to be reached on the basis of the record which has been submitted. "Record" as a word is no stranger to the law. Just as in the case of the judiciary, we assume that the decisional process at the administrative agency level includes the exchange of memoranda, analyses of facts and law, and drafts of proposed decisions—all based upon the record which provides the subject for the operation of the decisional process. While in a broad and loose sense it might be said that every document in the case file was a part of the record, it is our view that the Congressional intent here was to define "complete record" as meaning the facts upon which the agency would pass, not the internal documents relating to the process of that passing. What we have said would be particularly applicable to routine or mechanical aspects of the case file such as the formal acknowledgment of receipt of the letter of July 18.

To hold other than as we do would be to place it within the power of the Fed's agents to wholly defeat the purpose of the time limitation in the BHC Act. The limit was enacted in response to an apparent slow pace on the part of the Fed in ruling on applications. It would have no meaning if the Fed had the power to determine when the time had begun to run. If the Fed position were accepted, the addition to the case file on the 89th-day of a simple one paragraph staff recommendation would recommence the running of the statutory time limitation.

We are not unmindful that the Fed's personnel can by other means extend the period of time. Thus, counsel for the

Fed during oral argument before this court stated:

"To force the Board to adhere to the—what we consider overly strict and incorrect construction of 1842(b) would I think, your Honors recognize, force the Board to either ask for additional information from the applicant or other agencies when that's not really required simply to delay the case in order to fit within the narrow guidelines. or in the alternative to force the Board to deny the application simply to meet the 91-day rule."

While it is not a complete answer to the possibility suggested in argument, we do note that the submission of staff reports and recommendations will normally occur during the running of the statutory period without there being any external indication to the applicant or any other interested party as to when the record is complete under the Fed's interpretation. On the other hand, either a denial of the application or a request for additional information would involve external manifestations which if based upon no rational reason other than that of securing time, might well properly expose the administrative body to a charge of bad faith. We choose to believe that this responsible part of our Government will act in a responsible and good faith manner.

The Fed's brief discusses public policy considerations which favor regulation of bank holding companies. It also discusses the merits of petitioner's application at length under the guise of showing how public policy applies in this case. The merits of the application are, of course, wholly unrelated to the issue this court must decide. The Fed overlooks Congress's declaration implicit in § 1842(b) that it may well be a lesser evil as a matter of public policy for a non-meritorious application to be deemed approved by operation of law than to risk allowing a meritorious application to be delayed by federal bureaucracy for more than 91 days.

The public, in any event, is not without protection. Congress has recently subjected bank holding companies to continuing supervision. 12 U.S.C. § 1818(b)(3); Pub.Law 93–495, October 28, 1974. Finally, the standard we are setting is not impossible to meet. At oral argument the Fed's counsel stated that in 1973 seventy-six percent and in 1974 seventy-five percent of the applications filed were processed within 91 days of the time they were received in Washington. He also stated that the reason many of the applications which took longer than 91 days did so was because applicants were given an opportunity to amend their applications.

The holding we have reached in this case, of course, does not mean that the submission of the complete record has occurred when the decisional process develops the need for further information which is thereupon requested. The completion of the record status is not reached until all factual data from external sources necessary for the decision has been actually submitted to the Fed. In the present case, that occurred on July 23.

The petitioner corporation was in the business of running a general insurance agency. If its bank holding company application had been approved, it would have become a bank holding company engaged also in the operation of a non-banking business. To retain, as part of a bank holding company, interest in a non-banking organization, Tri-State also had to seek Board approval under 12 U.S.C. § 1843(c)(8). The petitioner did apply for section 1843 approval simultaneously with its application for bank holding company status. The Fed in its order of October 25, 1974, appended the following footnote:

"In view of the Board's action with respect to the application to become a bank holding company, consideration of the application to engage in insurance agency activities becomes moot."

In its petition filed in this court, Tri-State references only its application under § 1842. However, the petition stated that it was "asking that the Order of the Board of Governors be set aside." The

**568**

parties on this appeal have directed their entire attention to the § 1842 issue.

While the petition for review is not explicitly or artistically drafted, we will treat it on the basis that it was challenging the entire order of October 25, 1974, including the determination that the § 1843 application had been mooted.

Upon that basis, we note that a time limitation is also imposed upon the Fed by the 1970 amendments to the Act:

"In the event of the failure of the Board to act on any application for an order under paragraph (8) of this subsection within the ninety-one-day period which begins on the date of the submission to the Board of the complete record on that application, the application shall be deemed to have been granted." 12 U.S.C. § 1843 (c)(13).

While we have nothing before us pertaining to the merits of the § 1843 application, we do not deem that the merits have any more materiality than they did in the § 1842 application.

Accordingly, the order of October 25, 1974, is vacated and set aside and the applications of Tri-State Bancorporation are deemed granted as a matter of law.