**FIRST LINCOLNWOOD
CORPORATION,
Petitioner,**

**v.**

**BOARD OF GOVERNORS OF the
FEDERAL RESERVE SYSTEM,
Respondent.**

**No. 76–1114.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 22, 1976.

Decided Dec. 7, 1976.

Rehearing and Rehearing En Banc
Granted March 3, 1977.

George B. Collins, Chicago, Ill., for petitioner.

Rex E. Lee, Asst. Atty. Gen., Michael H. Stein, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before CLARK, Associate Justice (Retired),* FAIRCHILD, Chief Judge, and HASTINGS, Senior Circuit Judge.

HASTINGS, Senior Circuit Judge.

Petitioner First Lincolnwood Corporation, Lincolnwood, Illinois (First Lincolnwood), is a non-operating corporation organized under the laws of Illinois, for the purpose of becoming a bank holding company through the acquisition of the First National Bank of Lincolnwood, Lincolnwood, Illinois (Bank).

Petitioner seeks review of an order of respondent Board of Governors of the Federal Reserve System (Board or Federal Reserve Board), issued January 9, 1976, denying, on financial grounds, the application of First Lincolnwood to acquire the Bank.

The application was filed with the Federal Reserve Board pursuant to the Bank Holding Company Act of 1956, 12 U.S.C. §§ 1841–1848, as amended (the Act), which makes it unlawful for a company to acquire control of a bank without first obtaining prior approval of the Board.

Section 1842(c) of the Act prescribes that in determining whether to approve an application, the Board is required to consider "the financial and managerial resources and future prospects of the company or companies and the banks concerned, and the convenience and needs of the community to be served," as well as the competitive effects of the proposed transaction.

Section 1842(b) of the Act prescribes the following time limitation for Board consideration of an application to acquire control of a bank:

> In the event of the failure of the Board to act on any application for approval under this section within the ninety-one day period which begins on the date of submission to the Board of the complete record on that application, the application shall be deemed to have been granted.

Section 1848 of the Act provides that "[a]ny party aggrieved by an order of the Board" may petition for review in a United States Court of Appeals, and that "[t]he findings of the Board as to the facts, if supported by substantial evidence, shall be conclusive."

* The Honorable Tom C. Clark, Associate Justice, Supreme Court of the United States, Retired, is sitting by designation.

## THE ISSUES ON PETITION FOR REVIEW

1. Whether substantial evidence supports denial of petitioner's application to form a one-bank holding company on grounds of inadequate capitalization.

2. Whether the order of the Federal Reserve Board was issued within ninety-one days from the date of submission to the Board of the complete record on the application of the petitioner.

3. Whether the Federal Reserve Board complied with its own regulations governing applications for approval of the formation of a one-bank holding company.

## BASIC FACTS

We first consider a statement of the basic facts and procedures underlying this petition for review.

On June 3, 1975, the Federal Reserve Bank of Chicago (Chicago Reserve Bank) accepted an application of First Lincolnwood to become a bank holding company through the acquisition of eighty per cent or more of the voting shares of the Bank. A voting trust controls the Bank through August 1, 1982.

A copy of the application was sent to the Comptroller of the Currency for his views and recommendations and to the Attorney General. The Attorney General did not respond. Notice of the application was also given to the several required federal and state agencies and was published in the Federal Register.

The Chicago Reserve Bank declined to exercise its delegated authority to act on the application, but forwarded the application to the board for its consideration and action because of the current capital position of the bank and its unsatisfactory debt structure.

The Comptroller of the Currency first ruled adversely on the application but later reconsidered and voted favorably on it.

First Lincolnwood holding company is essentially a restructuring of the Bank's ownership whereby the ownership of the Bank will be shifted from individuals now owning somewhat over eighty per cent of the 144,375 shares of common stock authorized and outstanding, to a corporation owned by the same individuals, with no real change in control or management. The holding company intended to acquire the bank stock now held by the voting trust (eighty per cent would be required for tax purposes), and the holding company would also acquire by purchase $1,500,000 in additional bank stock within one year of completion of the transaction to further capitalize the Bank.

The real purpose of the acquisition is that the holding company would assume a debt of $3,700,000 owed by the Bank's principals to Central National Bank, secured by the Bank's stock, with an annual interest charge of $260,000. This would permit the filing of a consolidated tax return which, in turn, would allow this interest deduction to be taken against the earned income of the Bank, with an ultimate increase in funds available to the Bank, as increased after tax earnings, of about $130,000.

The Bank had some early "adverse history" following the indictment of its then chairman and its former president in a case involving the manipulation of the stock on the American Stock Exchange. All parties now agree that the Bank's present management, headed by its chief executive officer, Mr. Harold Cohn, is outstanding and has converted the Bank to its now favorable condition.

Upon final consideration of the facts of record, the Federal Reserve Board denied the application. A copy of the Board's order is attached hereto as an Appendix to this opinion.

### I

■ On the basis of our consideration of the record as a whole, together with the findings of the Board as set out in the attached Appendix, we have no difficulty in finding that there is substantial evidence to support the denial of petitioner's application.

The basic guidelines for consideration of this precise question are to be found in two thoroughly considered opinions authored by Judge Swygert of our court, *First Wisconsin Bankshares Corp. v. Board of Governors of Federal Reserve System,* 7 Cir., 325 F.2d 946 (1963), and *Marine Corp. v. Board of Governors of Federal Reserve System,* 7 Cir., 325 F.2d 960 (1963). We find these two cases to be dispositive of the first issue on this petition for review.

## II

We find Judge Pell's opinion in *Tri-State Bancorp, Inc. v. Board of Governors of Federal Reserve System,* 7 Cir., 524 F.2d 562 (1975), to be instructive on the date the ninety-one day period begins to run in order to determine whether the application for approval of a bank holding company shall be deemed to have been granted. We have earlier herein set out the provisions of 12 U.S.C. § 1842(b).

In *Tri-State,* the court regarded the principal issue as being the proper construction of the statutory phrase "complete record." After reviewing the legislative history of the Act and various tangential decisions, the court held "that the 91-day period of § 1842(b) begins to run when the final material needed for the Fed's decision is received from the various interested sources outside the Fed, which ordinarily would be the applicant and governmental agencies other than the Fed. * * * [I]t is our view that the Congressional intent here was to define 'complete record' as meaning the facts upon which the agency would pass, not the internal documents relating to the process of that passing." 524 F.2d at 566.

Further, the court in *Tri-State* said: "The holding we have reached in this case, of course, does not mean that the submission of the complete record has occurred when the decisional process develops the need for further information which is thereupon requested. The completion of the record status is not reached until all factual data from external sources necessary for the decision has been actually submitted to the Fed." 524 F.2d at 567.

We are in accord with the holding in *Tri-State* that the ninety-one day period does not start to run until the final material needed for the Board's decision is received from various interested sources outside the Board. In the instant case the Board's action on January 9, 1976, was well within ninety-one days of the last submission to it by First Lincolnwood on November 8, 1975, of the third quarter financial statements of the Bank. This was completely relevant and necessary as the basis for calculation of the Bank's invested asset ratios which support the Board's denial. First Lincolnwood acquiesced completely in furnishing the third quarter figures.

First Lincolnwood argues that the ninety-one day period ran from the date of acceptance of its application by the Reserve Bank of Chicago. This is unrealistic and in conflict with *Tri-State.* Likewise, we find no merit in First Lincolnwood's attempt to extend the holding in *Tri-State* by contending that a submission, in order to be deemed necessary to a Board decision, must be noted in the Board's order in order for the submission to mark the start of the ninety-one day period.

We have considered other contentions of First Lincolnwood on the ninety-one day time limitation period and are not persuaded by them.

We hold, therefore, that under the facts of this case, the Board acted within ninety-one days of the submission of the complete record on the First Lincolnwood application.

## III

Finally, First Lincolnwood contends that the Federal Reserve Board failed to comply with its own regulations for the approval of the formation of a one-bank holding corporation.

Under the Board's appropriate regulation concerning this issue, it is provided that:

Any application for the Board's approval of the formation of a company that controls only one bank shall be deemed to be approved forty-five days after the company has been informed by its Reserve Bank that said application has been ac-

cepted, *unless the company is notified to the contrary within that time* or is granted approval at an earlier date. (Emphasis added.)

12 C.F.R. 225.3(b) (1976).

The record on review establishes that petitioner was notified on June 3, 1975 (seventeen days after the filing of its application), that the forty-five day period would not apply, and that its application would be forwarded to the Board for action, in lieu of action by the Chicago Reserve Bank under delegated authority.

By letter dated June 3, 1975, the Reserve Bank informed Mr. Harold Cohn, President of First Lincolnwood, that First Lincolnwood's application was accepted as of that date. The letter informed Mr. Cohn that the application would require action by the Federal Reserve Board because of the capital position of the Bank and, accordingly, that "[i]n view of the factors involved in this transaction, the 45-day period as provided in Section 225.3(b) of the Board of Governors' Regulation Y is hereby suspended."

This letter received by Mr. Cohn appears to be dispositive of this issue on review. The Board fully complied with its own regulation.

———

In sum, based on the foregoing, together with the order of the Board, as set out in the Appendix hereto, which we fully approve, the order of the Federal Reserve Board denying the application of First Lincolnwood is in all respects approved and affirmed.

AFFIRMED—REVIEW DENIED.

APPENDIX

FEDERAL RESERVE SYSTEM

FIRST LINCOLNWOOD CORP.

Order Denying Formation of Bank Holding Company

First Lincolnwood Corp., Lincolnwood, Illinois, has applied for the Board's approval under § 3(a)(1) of the Bank Holding Company Act [12 U.S.C. § 1842(a)(1)] of formation of a bank holding company through acquisition of 80 per cent or more of the voting shares of The First National Bank of Lincolnwood, Lincolnwood, Illinois ("Bank").

Notice of the application, affording opportunity for interested persons to submit comments and views, has been given in accordance with § 3(b) of the Act. The time for filing comments and views has expired, and the Board has considered the application and all comments received, including those submitted by the Comptroller of the Currency, in light of the factors set forth in § 3(c) of the Act [12 U.S.C. § 1842(c)].

Applicant is a non-operating corporation organized under the laws of Illinois for the purpose of becoming a bank holding company through the acquisition of Bank. With deposits of $65.7 million, Bank holds approximately two-tenths of one per cent of the total deposits held by commercial banks in the relevant banking market (approximated by the Chicago area) and is the 67th largest of the market's 286 banks.[1] Inasmuch as this proposal represents essentially a transfer of Bank's ownership from individuals to a corporation owned by the same individuals, and Applicant has no present banking subsidiaries, the acquisition of Bank by Applicant would not eliminate any significant existing competition nor foreclose potential competition, increase the concentration of banking resources, or have any adverse effect upon competition within the relevant banking market. Accordingly, the Board concludes that competitive considerations are consistent with approval of the application.

The Board has indicated on previous occasions that a bank holding company should provide a source of financial and managerial strength to its subsidiary bank(s), and that the Board will examine closely the condition of the applicant in each case with this consideration in mind. In connection with this proposal, Applicant will incur acquisition debt of approximately $3.7 million,

1. All banking data are as of December 31, 1974, unless otherwise indicated.

which debt Applicant proposes to service over a twelve-year period primarily through earnings of Bank. In the Board's view, the projected earnings of Applicant over the debt-retirement period appear to be somewhat optimistic in view of Bank's previous earnings record and, even if actually realized, would not provide Applicant with the financial flexibility necessary to meet its annual debt service requirements while maintaining adequate capital at Bank. Furthermore, although Applicant has stated that Bank plans to augment its capital accounts through the sale of $1.1 million in equity capital and $1.0 million debt capital within three to six months of approval of this application, the Board is concerned that the financial requirements imposed upon Applicant as a result of the acquisition debt, and uncertainty as to the source of funds for Bank's proposed capital injections, could prevent Applicant from resolving any unforeseen problems that may arise at Bank. On the basis of the above banking factors, and other facts of record, the Board is of the view that it would not be in the public interest to approve the formation of a bank holding company with an initial debt structure that could result in the weakening of Bank's overall financial condition. Accordingly, the Board concludes that the considerations relating to the banking factors weigh against approval of the application.

As indicated above, the proposed bank holding company formation is essentially a restructuring of the ownership interests of Bank without any significant changes in Bank's operations or the services offered to customers of Bank. Consequently, considerations relating to the convenience and needs of the community to be served are consistent with, but do not lend weight toward, approval of the application.

On the basis of all of the circumstances concerning this application, the Board concludes that the banking considerations involved in the proposal present adverse factors bearing upon the financial conditions and future prospects of both Applicant and Bank. Such adverse factors are not outweighed by any procompetitive effects or by benefits to the convenience and needs of the relevant community. Accordingly, it is the Board's judgment that approval of the application would not be in the public interest and that the application should be denied.

On the basis of the facts of record, the application is denied for the reasons summarized above.

By order of the Board of Governors,[2] effective [3] January 9, 1976.[4]

> (Signed) Theodore E. Allison
> Theodore E. Allison
> Secretary of the Board

[SEAL]

FAIRCHILD, Chief Judge (dissenting in part).

The facts in this case fail to show any greater risk to the financial structure of the bank in question or to the community which it serves if a bank holding company is formed than if present private ownership continues. Accordingly, I respectfully dissent from the court's resolution of the first issue in this case.

The Board's denial of appellant's application to form a holding company is based on its finding of an unfavorable ratio of debt to capital in the proposed holding company's financial structure. But, as the parties agree, this debt/capital ratio would by no means result from the creation of the proposed holding company. It is a present fact of the bank's existence that must be coped with whether the bank is privately or publicly owned.[1] On oral argument, counsel for the Board twice admitted that there

---

2. Voting for this action: Vice Chairman Mitchell and Governors Bucher, Holland, Wallich, Coldwell, and Jackson. Absent and not voting: Chairman Burns.

3. Board action was taken while Governor Bucher was a Board member.

4. Board action was taken before Governor Partee became a Board member.

1. The present debt was incurred by the owners of the bank in order to buy out the shares of the former Chairman of the Board. He was under indictment in a case involving stock ma-

would be practically no realistic difference in the financial operation of the bank whether it was owned by private individuals or allowed to operate through a bank holding company. Indeed, counsel went on to concede that operation under a bank holding company might be financially sounder in the instant case as a result of approximately $130,000 in annual tax savings that would be possible because of the opportunity to file a consolidated tax return.

Nevertheless, the Board's position is that it is empowered to deny bank holding company status whenever it is unsatisfied with a bank's financial structure, regardless of whether the risks of that structure exist to the same, or even to a greater, degree under private ownership. The Board cites as the source of authority for its exercise of this power the last sentence of 12 U.S.C. § 1842(c) which provides that "in every case [in which application as a holding company is being made] the Board shall take into consideration the financial and managerial resources and future prospects of the company or companies and the banks concerned, and the convenience and needs of the community to be served."

The critical issue as we see it, however, is whether this statute either empowers or requires the Board to deny the application unless persuaded that the bank's capability will be strengthened and its future prospects and servicing of the convenience and needs of the community positively improved by formation of a bank holding company (and that the improvement will be to a degree satisfactory to the Board), or whether the Board must be able to point to some increase of financial risk, some threat of injury to the community, which will ensue if a holding company is formed.

We believe the Board to have the burden. We draw this conclusion from our understanding of the Bank Holding Company Act. Its main thrust is not to avoid all bank holding companies as financial structures risky in and of themselves, making an exception only when the applicant can promise some public benefit. Its thrust is to avoid those structures which will create anti-competitive risks so that the public interest demands their proscription.[2] Thus, the form of two numbered provisions, which are the heart of 12 U.S.C. § 1842(c), indicates that it is not the applicant who is required to show that the proposed holding company will promote competition, in order to obtain approval, but rather the Board that must find evidence of anti-competitive effect in order to deny.[3] From this, we

nipulation, and this, together with other factors, had caused severe financial losses to the bank. Present management is trying to recoup these losses and restore the bank to a financially sound position. This is clear from the Federal Reserve Board of Chicago Report on the application of the First Lincolnwood Corporation and is undisputed.

2. In its report the Senate Committee responsible for the Bank Holding Company Act stated that it was " . . . not the committee's contention that bank holding companies are evil of themselves. However, because of the importance of the banking system to the national economy, adequate safeguards should be provided against undue concentration of control of banking activities." S.Rep. No. 1095, 84th Cong., 2d Sess. *reprinted in* [1956] U.S.Code Cong. & Ad.News, 2d Sess., p. 2482, *see also* S.Rep. No. 91–1084, 91st Cong., 2d Sess. *reprinted in* [1970] U.S.Code Cong. & Ad.News, pp. 5519, 5520 (indicating the same Congres-

sional concerns in amending the Act to include one-bank holding companies).

3. 12 U.S.C. § 1842(c) provides:
   The Board shall not approve—
   (1) any acquisition or merger or consolidation under this section which would result in a monopoly, or which would be in furtherance of any combination or conspiracy to monopolize or to attempt to monopolize the business of banking in any part of the United States, or
   (2) any other proposed acquisition or merger or consolidation under this section whose effect in any section of the country will be substantially to lessen competition, or to tend to create a monopoly, or which in any manner would be in restraint or trade, unless it finds that the anticompetitive effects of the proposed transactions are clearly outweighed in the public interest by the probable effect of the transaction in meeting the convenience and needs of the community to be served.

conclude that in those cases arising under the more general language of the last sentence of 12 U.S.C. § 1842(c), it is likewise necessary for the Board to support a denial of holding company status by pointing to some risk, either to the financial structure of the bank itself, or to the community which it serves, that would attend formation of a bank holding company and that would not be present under the current ownership. The Board has not done this.

Though our inclination ordinarily would be to defer to the Board's expertise in judging what risks attending the formation of a bank holding company warrant denial of that status,[4] when the Board has not indicated its finding of any increase in risk either in its denial statement or in the brief filed with this court, and when it in fact has admitted on oral argument that no greater risk is posed by the formation of a holding company in this case than already exists under private ownership, there is, in my opinion, insufficient support for the denial. I would reverse.

In every case, the Board shall take into consideration the financial and managerial resources and future prospects of the company or companies and the banks concerned, and the convenience and needs of the community to be served.

4. The majority cites two cases as evidence of the deference this court has generally shown decisions of the Federal Reserve Board on applications for holding company status. *See First Wisconsin Bankshares Corp. v. Board of Governors of Federal Reserve System,* 325 F.2d 946 (7th Cir. 1963); *Marine Corp. v. Board of Governors of Federal Reserve System,* 325 F.2d 960 (1963). But in both these cases, the Board reported on anti-competitive effects that would result from the acquisition of the banks in question by holding companies. In the instant case, the Board concedes that no anti-competitive effects, or indeed, any adverse effects will be directly attributable to the formation of the proposed holding company.