**FIRST LINCOLNWOOD CORPORA-TION, an Illinois Corporation, Petitioner,**

v.

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent.**

**No. 76–1114.**

United States Court of Appeals, Seventh Circuit.

Argued in banc April 19, 1977.

Decided July 13, 1977.

As Amended July 14, 1977.

---

George B. Collins, Chicago, Ill., for petitioner.

Rex E. Lee, Asst. Atty. Gen., Michael H. Stein, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before FAIRCHILD, Chief Judge, and SWYGERT, CUMMINGS, PELL, SPRECHER, BAUER and WOOD,* Circuit Judges.

FAIRCHILD, Chief Judge.

Petitioner (First Lincolnwood) is an Illinois corporation, formed to acquire and hold 80% of the stock of the First National Bank of Lincolnwood. Because such acquisition would cause First Lincolnwood to become a bank holding company, 12 U.S.C. § 1841(a), the proposed acquisition requires approval of the Board of Governors of the Federal Reserve System, 12 U.S.C. § 1842(a). The Board denied approval and the Bank petitioned this court for review. A panel of this court affirmed. *First Lincolnwood Corporation v. Board of Governors of the Federal Reserve System,* 546 F.2d 718 (7th Cir. 1976).

The court has reheard the case *in banc.* We will avoid unnecessary repetition of the facts set forth in the panel opinion.

The controlling statute is 12 U.S.C. § 1842(c):

The Board shall not approve—

(1) any acquisition or merger or consolidation under this section which would result in a monopoly, or which would be in furtherance of any combination or conspiracy to monopolize or to attempt to monopolize the business of banking in any part of the United States, or

---

* The Honorable Philip W. Tone did not participate in the consideration or decision of this appeal.

(2) any other proposed acquisition or merger or consolidation under this section whose effect in any section of the country may be substantially to lessen competition, or to tend to create a monopoly, or which in any manner would be in restraint of trade, unless it finds that the anticompetitive effects of the proposed transactions are clearly outweighed in the public interest by the probable effect of the transaction in meeting the convenience and needs of the community to be served.

In every case, the Board shall take into consideration the financial and managerial resources and future prospects of the company or companies and the banks concerned, and the convenience and needs of the community to be served.

▪ The standards set forth in (1) and (2) relate to the question whether a proposed bank holding company structure will tend toward the lessening of competition, and it is clear from the legislative history that Congress' principal concern in regulating the acquisition of banks by bank holding companies is with the anticompetitive potential. Thus in the 1956 Senate Report on the Act it was noted:

. . . the principal problems in the bank holding company field arise from two circumstances: (1) The unrestricted ability of a bank holding company group to add to the number of its banking units, making possible the concentration of commercial bank facilities in a particular area under a single control and management; and

(2) The combination under single control of both banking and non-banking enterprises, permitting departure from the principle that banking institutions should not engage in business wholly unrelated to banking.

See S.Rep.No. 1095, 84th Cong., 2d Sess., *reprinted in* [1956] U.S.Code Cong. & Ad. News, pp. 2482, 2483. The Senate Report accompanying the 1966 amendments to the Bank Holding Company Act also noted that the purpose of the Act was "to apply in the field of banking and bank holding compa-

nies the general purposes of the antitrust laws—to promote competition and to prevent monopoly, and the general purposes of the Glass-Steagall Act of 1933—to prevent unduly extensive connections between banking and other businesses." *See* S.Rep.No. 1179, 89th Cong., 2d Sess., *reprinted in* [1966] U.S.Code Cong. & Ad. News, pp. 2385, 2386. And the Senate Report accompanying the 1970 amendments continued to describe the Act as one regulating the "ability of . . . a [bank holding] company to obtain banking units, thereby concentrating the commercial bank facilities in a particular area under a single control" and "the combination, again under a single control, of banking and nonbanking enterprises." *See* S.Rep.No. 91–1084, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Ad.News, pp. 5519, 5520.

▪ We have no doubt that considerable deference must be accorded to a determination by the Board that a particular acquisition will have an anticompetitive tendency proscribed in (1) or (2). This court has upheld such decisions in cases where it was contended or even found that the considerations other than the anticompetitive factors militated in favor of the proposed acquisition. *First Wisconsin Bankshares Corp. v. Board of Governors,* 325 F.2d 946 (7th Cir. 1963); *Marine Corporation v. Board of Governors of Fed. Res. Sys.,* 325 F.2d 960 (7th Cir. 1963).

The question in this case, however, goes to the standard which governs the Board where no anticompetitive tendency is present, and the court must look only to the unnumbered paragraph at the end of the subsection. How broad is the Board's discretion to deny approval under those circumstances?

The Board's order denying approval is set out in an Appendix to the panel decision, 546 F.2d at 722, 723. It is clear that "the proposed bank holding company formation is essentially a restructuring of the ownership interests of Bank," and "essentially a transfer of Bank's ownership from individuals to a corporation owned by the same individuals," and "would not eliminate any

significant existing competition nor foreclose potential competition, increase the concentration of banking resources, or have any adverse effect upon competition within the relevant banking market."

Thus the express standards for disapproval in paragraphs (1) and (2) were not fulfilled. The Board, however, apparently concludes that the unnumbered final sentence of § 1842(c) implies a "public interest" standard with respect to the financial and managerial resources and future prospects of the company or companies and the banks concerned and the convenience and needs of the community to be served. Because of the Board's concern over the $3.7 million indebtedness to which First Lincolnwood will be subject after acquiring the Bank's stock, and limitations upon First Lincolnwood's ability to resolve "any unforeseen problems that may arise at Bank," the Board deemed the proposal not in the public interest.

Because Congress required "consideration" of financial and managerial resources, future prospects, and convenience and needs of the community, it may well have intended that the Board disapprove an acquisition which would adversely affect the public interest vis-à-vis those considerations, even where no anticompetitive tendency is apparent.

As originally enacted, the general language regarding the consideration of soundness and community welfare was clearly not a mere modifier of the language dealing with anticompetitive effect. In 1956, § 1842(c) read as follows:

In determining whether or not to approve any acquisition or merger or consolidation under this section, the Board shall take into consideration the following factors: (1) the financial history and condition of the company or companies and the banks concerned; (2) their prospects; (3) the character of their management; (4) the convenience, needs, and welfare of the communities and the area concerned; and (5) whether or not the effect of such acquisition or merger or consolidation would be to expand the size or extent of

the bank holding company system involved beyond limits consistent with adequate and sound banking, the public interest, and the preservation of competition in the field of banking.

*See* The Bank Holding Company Act of 1956, Pub.L.No. 511, Sec. 3(c), *reprinted in* [1956] U.S.Code Cong. & Ad.News 169, 171. In 1966 the language was amended to its present form, *see* An Act to Amend the Bank Holding Company Act of 1956. Pub. L.No. 89–485, Sec. 7(c), *reprinted in* [1966] U.S.Code Cong. & Ad.News 265, 267 (codified at 12 U.S.C. § 1842(c)). Except for adding emphasis to the anticompetitive considerations and specifying the possibility that convenience and necessity may outweigh an anticompetitive tendency, the change to the present form of (c) does not appear to have significantly changed the substance. The reports indicate the change in language came in order to conform the standards of Board review in bank holding company cases to those used in bank merger cases. *See* S.Rep.No. 1179, 89th Cong., 2d Sess., *reprinted in* [1966] U.S.Code Cong. & Ad.News 2385, 2393. *See also* that portion of the Bank Merger Act, 12 U.S.C. § 1828(c)(5), which is identical to section 1842(c) of the Bank Holding Company Act. From the legislative history of the Bank Merger Act we learn that Congress wanted the Board to consider matters not strictly related to competitive effect, so that on those few occasions when a community would be greatly benefited by a bank holding company's operation, such benefits would not be denied simply because the Board, tied to a strict competitive analysis, felt itself obliged to deny approval of the holding company. *See* S.Rep.No. 1221, 89th Cong., 2d Sess., *reprinted in* [1966] U.S.Code Cong. & Ad.News 1860, 1863.

■ Thus we conclude that the Board is empowered to deny approval of a bank acquisition upon finding it not to be in the public interest for reasons other than an anticompetitive tendency.

■ What we think the Board has overlooked here is the logic that, in order to be grounds for disapproval, the condition or

tendency deemed not to be in the public interest must be caused or enhanced by the proposed transaction. Here the concern of the Board is the amount of indebtedness to be assumed by the corporate owner of the Bank. Yet the individual present owners are obliged in the same amount. The indebtedness already exists, as well as the substantial capitalization of the Bank. The proposed transaction will not create nor increase the debt, nor increase any danger it poses to the soundness of the Bank. The only changes identified as resulting from the proposed transaction are a tax advantage which will make it possible to speed the reduction of the debt, and a proposed addition to Bank capital which will alleviate the other concern. Both changes are favorable to the public interest, although they do not guarantee as much of an improvement as the Board would like.

The Board assumes the stance that the tax advantage of bank holding company status is a reward which it may withhold until the applicant's financial status fulfills the Board's standard of desirability. We do not find this power or breadth of discretion in the statute.

■ In considering the scope of the Board's discretion to deny bank holding company status pursuant to the last sentence of 12 U.S.C. § 1842(c), we have been mindful of the fact that as originally enacted, the Bank Holding Company Act empowered the Federal Reserve Board to regulate only those holding companies that exercised control over *two* or more banks. *See* Bank Holding Company Act of 1956, Pub.L.No. 511, Section 2(a), *reprinted in* [1956] U.S. Code Cong. & Ad.News 169.[1] In this light, we construe the language about considering financial soundness and community convenience to represent congressional thought that corporate control over two or more banks might have effects unrelated to competition, but nevertheless appropriate for consideration. Weakness of a bank to be acquired might be a reason in the public interest for allowing it to be owned by a strong holding company, and to be balanced as a factor in favor of the acquisition and perhaps outweighing a concern over a possibility that competition might be decreased. Or under some circumstances its weakness might be deemed a reason for not burdening an existing holding company system. It seems reasonable then that Congress intended the Federal Reserve Board to withhold its approval where the formation or enlargement of the holding company structure would cause or tend to cause undesirable effects in terms of financial soundness and service. But, we do not find any indication that Congress meant the Board to go beyond this inquiry, and to consider questions of bank soundness and public need apart from how these would be altered by formation or enlargement of a bank holding company. These matters were already reserved to the Comptroller of the Currency in the case of national banks, or to various state agencies in the case of local banks.

■ Nothing in the history of the 1970 amendment to the Act which extended Board control to one-bank holding companies indicates any intent by Congress to alter this scheme. Indeed, it seems the primary reason for extending the coverage of the Act was the belief that the large growth in assets held by one-bank holding companies made it as necessary to remove the danger that a one-bank holding company "might misuse or abuse the resources of a bank it controls in order to gain an advantage in the operation of a nonbanking activity" as it originally had been to remove the danger that multi-bank holding companies might so misuse resources. *See generally* S.Rep.No. 91–1084, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Ad. News 5519, 5520–22. In short, it seems Congress' concern in extending the coverage of the Act to one-bank holding companies was more with bringing such compa-

---

1. We note that when in 1966 the Bank Holding Company Act was amended to include section 1842(c) as we now know it, the power of the Federal Reserve Board over bank holding companies was still limited to those companies exercising control over two or more banks.

nies under the limits of 12 U.S.C. § 1843[2] than with suggesting any broadening of Board discretion pursuant to section 1842(c). Accordingly, we conclude that the scope of Board discretion with respect to one-bank holding companies is identical to its discretion with respect to multi-bank holding companies: the Board can withhold approval of an acquisition whenever it is of the opinion that formation or enlargement of the holding company will result in effects harmful to competition, to the financial resources of the banks involved or to the needs and convenience of the communities to be served.

■ We reject then the Board's position that the general language of section 1842(c) either requires or authorizes it to withhold its approval where, as here, the soundness of operation of the bank involved is not adversely affected by the formation of a bank holding company.[3] The soundness of the First National Bank of Lincolnwood, except as adversely affected by the formation of a bank holding company is a matter for the Comptroller of the Currency. Only he has the real power to protect the public from unsound national banking institutions, i. e., by revoking their certificate to do banking. In contrast, a denial of one-bank holding company status to a corporation desiring to hold the stock of one bank on grounds that the bank involved has financial problems does little, if anything, to protect the public. The denial does not prevent the bank from continuing operation. It does not signal the public that it should be wary of dealing with the bank in question. In this case, the record indicates that the Comptroller of the Currency has considered the capitalization ratio of the First National Bank of Lincolnwood and, after the bank agreed to some changes in the proposal, recommended approval.[4]

The Board has not identified any undesirable effect or tendency which would be reasonably expected to be produced by the proposed acquisition. The low capitalization ratio and the debt of its stockholders already exist. The only identified effects of the acquisition, the tax saving, and the infusion of capital militate in favor of the acquisition. Thus the Board erred in denying approval. We do not order approval, only because there has been a delay of sufficient extent that relevant circumstances may have changed.[5]

The Board's denial of approval of the acquisition of the Bank and First Lincolnwood is set aside, and the cause is remanded to the Board for proceedings consistent with this opinion.

---

2. 12 U.S.C. § 1843 provides, in pertinent part, that, (a) Except as otherwise provided in this chapter, no bank holding company shall—

   (1) After May 9, 1956, acquire direct or indirect ownership or control of any voting shares of any company which is not a bank

   . . . . .

3. As the Board conceded on oral argument to the original panel that heard this case, operation of the First National Bank of Lincolnwood through a one-bank holding company might in fact be financially sounder as a result of approximately $130,000 in annual tax savings that would be possible because of the opportunity to file a consolidated tax return.

4. Pursuant to 12 U.S.C. § 1842(b), the Comptroller of the Currency must review and make recommendations whenever a bank holding company applicant would control a national bank.

5. The panel rejected contentions of First Lincolnwood relating to the ninety-day period for approval of a bank holding company, 12 U.S.C. § 1842(b), and the Board's forty-five day approval regulation, 12 C.F.R. 225.3(b) (1976). First Lincolnwood did not seek rehearing as to those contentions, and as to them, the decision of the panel controls.