**SECURITY BANCORP, a California Corporation, Security National Bank, A National Banking Association, Petitioners,**

v.

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent.**

Nos. 78–1581, 78–2031.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 12, 1980.

Decided Oct. 27, 1980.

Supplemental Opinion April 10, 1981.

Justin M. Roach, Jr., Crosby, Heafey, Roach & May, Oakland, Cal., for petitioners.

Freddi Lipstein, Washington, D.C., for respondent.

Before HUG and SCHROEDER, Circuit Judges and BURNS *, District Judge.

SCHROEDER, Circuit Judge:

In these petitions for review we must decide whether the Federal Reserve Board properly denied an application to become a bank holding company pursuant to the Bank Holding Company Act, 12 U.S.C. §§ 1841–1849, and its requirement of adequate "managerial resources." 12 U.S.C. § 1842(c). The Board of Governors of the Federal Reserve System held that the applicant did not have adequate "managerial resources" and denied the application based upon the dominant shareholder's alleged past involvement in payments by American companies to foreign governments. 64 Fed. Res.Bull. 425 (1978). Because we believe that the Board interpreted "managerial resources" too broadly, we set aside its denial and order the Board to grant the application.

This case arises from an attempt to reorganize the Security National Bank of Walnut Creek, California. Ninety–seven percent of the stock in the bank is owned by Adnan M. Khashoggi. The management of

---

* Honorable James M. Burns, Chief Judge, United States District Court for the District of Oregon, sitting by designation.

the bank created another corporation, Security Bancorp, pursuant to a plan under which it would acquire all of the stock in the bank. Khashoggi would then become the principal shareholder in Security Bancorp with approximately the same percentage ownership as he had in the bank.

Under this reorganization Security Bancorp would become a "bank holding company" as that term is defined in section 2(a) of the Bank Holding Company Act, 12 U.S.C. § 1841(a). Security Bancorp therefore had first to obtain the approval of the Board of Governors of the Federal Reserve System. 12 U.S.C. § 1842(a). The factors which the Board is to consider in deciding whether to grant an application are set forth in 12 U.S.C. § 1842(c).[1] It directs the Board to consider, among other things, the "managerial resources" of the applicant and the bank or banks which it seeks to control. The section makes clear, however, that the primary purpose of the approval requirement is to prevent excessive concentration in the banking industry. *See Board of Governors v. First Lincolnwood Corp.*, 439 U.S. 234, 243, 99 S.Ct. 505, 510, 58 L.Ed.2d 484, 492 (1978).

Security Bancorp filed its application in April, 1975. Although the application involved a routine corporate reorganization that would have had no effect on the operation of the bank or on the concentration of the banking industry in Northern California, and in spite of the Comptroller of the Currency's approval of the application, the Board, after considerable delay, denied the application in April, 1978. The Board viewed Khashoggi's alleged involvement in payments by American companies to foreign governments, and his failure to respond to all of the Government inquiries into those activities, as reflecting unfavorably on the managerial resources of Security Bancorp and its bank. The matters under investigation were unrelated to the operation of any bank.

This appeal involves two consolidated petitions for review. The first, No. 78–1581, is from a Board order deferring action on the application. Security Bancorp asks this Court to declare the application to be deemed accepted by virtue of a provision of the Bank Holding Company Act which provides that completed applications not acted upon within 91 days are deemed accepted. 12 U.S.C. § 1842(b). The second, No. 78–2031, is an appeal from the final order of the Board denying the application. The dispositive issue in both is whether the Board, as part of its inquiry under "managerial resources," properly pursued an investigation into Khashoggi's activities wholly unrelated to bank management.

The leading case on the "managerial resources" requirement of the Bank Holding Company Act is *Board of Governors v. First Lincolnwood Corp., supra.* There the Board also denied a bank holding company application on the ground of defective managerial resources. The Board found that the bank's capital was inadequate based on several measures of capital adequacy customarily used by the Board to determine whether to grant an application. It was conceded that the creation of the bank holding company would have had no adverse competitive effects and that the bank's financial health would not become any worse

---

1. 12 U.S.C. § 1842(c) provides:
   The Board shall not approve—
       (1) any acquisition or merger or consolidation under this section which would result in a monopoly, or which would be in furtherance of any combination or conspiracy to monopolize or to attempt to monopolize the business of banking in any part of the United States, or
       (2) any other proposed acquisition or merger or consolidation under this section whose effect in any section of the country may be substantially to lessen competition, or to tend to create a monopoly, or which in any other manner would be in restraint or [sic] trade, unless it finds that the anticompetitive effects of the proposed transactions are clearly outweighed in the public interest by the probable effect of the transaction in meeting the convenience and needs of the community to be served.
   In every case, the Board shall take into consideration the financial and managerial resources and future prospects of the company or companies and the banks concerned, and the convenience and needs of the community to be served.

as a result of the creation of a bank holding company. The bank desired to use the holding company only as a device for obtaining more favorable tax treatment and the use of a holding company would have had no substantive effect on the operation of the bank. The Seventh Circuit held en banc that the Board could not disapprove an application under these circumstances because the creation of the bank holding company had no adverse competitive effect and it did not exacerbate any defect in the bank's managerial resources. 560 F.2d 258 (7th Cir. 1977). The Supreme Court reversed and held that the Board could disapprove an application if the bank's capital was inadequate.

The Board relies on *First Lincolnwood* for the proposition that its power to disapprove applications on the ground of defective managerial resources is very broad. However, the case simply held that the Board could look at the adequacy of bank capital. It did not extend the scope of the term "managerial resources" to matters beyond the financial condition of the bank or management's conduct of bank affairs.

In every Board decision of which we are aware involving denial of an application or order for divestiture because of defective managerial resources, the defect was one which bore directly on the operation of the bank. The Board has often applied the managerial resources requirement to the applicant's financial health. *E. g., Bankshares of Hawley, Inc.*, 62 Fed.Res.Bull. 610 (1975); *Citizens Bancorp*, 61 Fed.Res.Bull. 806 (1975); *Midwest Bancorporation*, 56 Fed.Res.Bull. 948 (1970). In other cases the Board has considered whether problems existed with respect to corporate organization, possible conflicts of interest, or lack of competent management. *E. g., Mid–Continent Bancorporation*, 52 Fed.Res.Bull. 198 (1966); *Bancorporation of Minnesota*, 51 Fed.Res. Bull. 1085 (1965); *Clayton Bankshares Corp.*, 50 Fed.Res.Bull. 1261 (1964). In still other cases the management had failed to secure the Board's approval before acquiring a bank. *E. g., The Berlin City Bank*, 63 Fed.Res.Bull. 268 (1977); *Seilon, Inc.*, 63 Fed.Res.Bull. 156 (1977); *Florida National Banks of Florida*, 62 Fed.Res.Bull. 696 (1976).

The Board itself has recognized that managerial resources do not include matters entirely collateral to the purposes of the Bank Company Holding Act. *American Security Corp.*, 62 Fed.Res.Bull. 255 (1976) (employment discrimination). *See also Western Bancshares, Inc. v. Board of Governors*, 480 F.2d 749 (10th Cir. 1973) ("public interest", another factor the Board is to consider, does not include the price at which the bank is acquiring the stock of another bank). This is apparently the first and only case in which the Board has attempted to construe managerial resources so broadly as to encompass the private, non–banking affairs of a shareholder, officer, or director of an applicant holding company or bank.

In this case there has never been any suggestion that Security Bancorp or its subsidiary bank are financially unsound or mismanaged, or that the officers or directors have attempted to avoid the requirements of the Bank Holding Company Act or other federal banking law. The Board's concern is rather that the primary shareholder, Khashoggi, has been named as one who had assisted American corporations in making payments to foreign government officials. At the time of these alleged payments Khashoggi would have violated no United States law in doing what he is alleged to have done, although such payments have since been criminalized under the Foreign Corrupt Practices Act, 15 U.S.C. §§ 78a, 78dd–1, 78dd–2, 78m(b), 78ff.

The issue before us, however, is not whether Khashoggi's conduct was reprehensible, but whether it is relevant to management of the bank. It is not alleged that bank funds were in any way endangered by Khashoggi's alleged participation in these activities. The alleged payments occurred years before Khashoggi became a shareholder of Security National, and while Khashoggi may have profited personally by acting as a middleman in these transactions, neither the bank which he owns nor its customers were prejudiced.

The Board also points to the policy statement of several federal banking agencies that making "improper payments" is an unsound banking practice. 43 Fed.Reg. 2759 (1978). The purpose of this declaration is to protect "the funds of the institution." But the conduct allegedly engaged in by Khashoggi was unconnected to the assets of any banking institution here involved.

The Board's attempt to deny this application on the basis of Khashoggi's alleged conduct appears tantamount to engrafting upon the Bank Holding Company Act a good moral character requirement.[2] Since Congress has chosen not to make such a requirement, we hold that the Board cannot create one under the guise of managerial resources.

The order of the Board is set aside and the Board is ordered to grant the application. 12 U.S.C. § 1848.

## SUPPLEMENTAL OPINION
## PER CURIAM.

 Following issuance of our opinion in this matter, but prior to the denial of the motion for rehearing, the government moved to vacate the opinion as moot because of the merger of Security Bancorp with another bank and the sale of Mr. Khashoggi's shares in Security Bancorp. The government has not indicated any desire to vacate the Federal Reserve Board's decision denying a permit to Security Bancorp, and such action would be required if this Court were to vacate its opinion reversing the Board. *See Western Sugar Co. v. Nelson*, 442 U.S. 92, 93, 99 S.Ct. 2149, 2150, 60 L.Ed.2d 735 (1978). The petitioners have opposed the motion and have expressed concern about the effects of this controversy upon possible future dealings between the principals should this matter not be resolved. *See Carroll v. President & Comm'rs*

*of Princess Anne*, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); C. Wright, A. Miller & E. Cooper, 13 Federal Practice and Procedure § 3533 at 280–81 (1975). In view of the discretion inherent in dismissing appeals when a particular controversy has expired, *see Alton & Southern Railway Co. v. International Assoc. of Machinists*, 463 F.2d 872, 880 (D.C.Cir.1972), we decline to vacate the opinion on grounds of mootness. The respondent's motion to vacate the decision is denied.

---

2. There are no federal restrictions on who may become a shareholder of a national bank. 12 U.S.C. §§ 61–62, 64a, 66–67 regulate shareholders with respect to such matters as voting rights, lists of shareholders, and individual liability. Even with respect to officers and directors the qualifications are modest. *See* 12 U.S.C. § 72 (citizenship, residency, and ownership requirements for directors); 12 U.S.C. § 78 (securities dealers cannot be officers or directors).