**CENTRAL STATE BANK, Plaintiff,**

v.

**Robert BLOOM, Acting Comptroller of the Currency of the United States, Defendant.**

Civ. A. No. 77-0484.

United States District Court, District of Columbia.

July 27, 1977.

Meyer Eisenberg, Leonard J. Rubin, Washington, D. C., for plaintiff.

Dorothy S. Kulig, Marilyn D. Britwar, Robert N. Ford, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION

WADDY, District Judge.

On July 22, 1976, Michigan National Bank—Grand Traverse, a national banking association (Applicant), filed an application with the Office of the defendant Comptroller of the Currency (Comptroller), requesting permission to establish a branch in the Village of Benzonia, Benzie County, Michigan.

Shortly thereafter plaintiff filed a protest and requested a public hearing. The hearing was held November 16, 1976.

At the hearing, plaintiff introduced evidence designed to show: (1) that Applicant, an affiliate of Michigan National Corporation, a bank holding company, was de facto a branch of another affiliate bank, Michigan National Bank—Lansing which intended to operate the bank; (2) that Michigan law permits the establishment of a branch bank only within 25 miles of the "parent" bank; (3) that Applicant was not the "parent" bank; (4) that Michigan National Bank—Lansing was the "parent" bank; (5) that Michigan National Bank—Lansing was more than 25 miles from the village in which the branch was to be located and therefore, the establishment of the proposed branch would violate Michigan law. Plaintiff also proffered other evidence designed to show "unitary operation" in support of its de facto theory, and its claim that Applicant was a member of an illegal statewide branch banking network operated by Michigan National Corporation under the guise of a bank holding company system. This evidence was held to be irrelevant and immaterial.

On or about February 28, 1977, the defendant Comptroller approved Applicant's application. Plaintiff brought this action on March 18, 1977, seeking declaratory and injunctive relief from that order of approval.

With its complaint plaintiff filed motions for a temporary restraining order and for a preliminary injunction. The motion for a temporary restraining order was denied and a hearing on the merits was ordered advanced and consolidated with the hearing on the motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a)(2). Thereupon defendant moved to dismiss the action or, in the alternative, for summary judgment, and plaintiff moved for summary judgment. These motions have been fully briefed and argued and are now before the Court for disposition.

Plaintiff contends in this action, as it did before the Comptroller, that Applicant is a de facto branch of Michigan National Bank—Lansing, the true "parent" bank, and, as such, is precluded by Section 171 of the Michigan Banking Code of 1969,[1] Michigan Statutes Annotated, § 23.710 (171) (1971), Michigan Compiled Laws Annotated, § 487.-

---

1. Section 171 of the Michigan Banking Code of 1969 provides that a state bank may branch as follows:

    (1) With the written approval of the Commissioner, any bank may establish and operate a branch or branches within a village or city other than that in which it was originally chartered if the village or city in which it is proposed to establish and operate a branch is located in the same county in which the parent bank has its principal office or, if not in the county, then within 25 miles of the parent bank, or in a contiguous county at a point more than 25 miles from the parent bank, if the county has no bank. A branch shall not be established in a city or village in which a state or national bank or branch thereof is then in operation. The Commissioner shall not grant such approval unless he is satisfied as to the sufficiency of the capital and surplus of the bank, the necessity for the establishment of such branch or branches and the prospects of successful operation if established.

    (2) With the written approval of the commissioner, any bank may establish and operate a branch or branches within the limits of the city or village in which the bank is located if the Commissioner is satisfied as to the necessity for the establishment of the branch or branches and the prospects of successful operation if established.

    (3) A branch of any bank shall not be moved from one location to another without the written approval of the Commissioner.

471, as implemented by 12 U.S.C. § 36(c),[2] from establishing a branch of a branch bank, and from establishing a branch bank more than 25 miles from the parent. (But see footnote 6, page 7 of defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss, etc.).

In its Complaint and Motion for a Preliminary Injunction plaintiff contends that Applicant is a part of an illegal statewide banking network operated by the Michigan National Corporation under the guise of a bank holding system.[3] However, in its Memorandum in Support of its Motion for Summary Judgment and in Opposition to defendant's motions, plaintiff argues that its "allegations are directed toward the Comptroller's approval of a branch bank, the authority for which comes solely under Sec. 36 of the National Bank Act."[4]

Plaintiff claims further that it was deprived of due process at the hearing on the application to establish the Benzonia branch by the Comptroller's refusal to accept evidence on the question of "unitary operation", which plaintiff argues is the crucial issue in determining whether Applicant is a *de facto* branch of Michigan National Bank—Lansing.

Finally, plaintiff argues that the Comptroller's approval of Applicant's application was arbitrary, capricious, and an abuse of discretion and not otherwise in accordance with law.

In response to plaintiff's contention that Applicant is a *de facto* branch of Michigan National Bank—Lansing, defendant asserts that the establishment of a national bank as a subsidiary of a bank holding company, and the relationship of that bank within the holding company structure are matters within the *sole* discretion and jurisdiction of the Board of Governors of the Federal Reserve System, subject to review by the Court of Appeals.

With respect to this case, the Comptroller conditionally approved the application to charter Michigan National Bank—Grand Traverse in 1975. Michigan National Corporation, a registered bank holding company under the Bank Holding Company Act, then applied to the Board of Governors of the Federal Reserve System for permission to acquire control of the voting shares of Michigan National Bank—Grand Traverse. That permission was granted.[5] Plaintiff did not participate in those proceedings, and has never raised questions about the operation of Michigan National Bank—Grand Traverse before the Federal Reserve Board.

Relying principally on *Whitney National Bank in Jefferson Parish v. Bank of New Orleans*, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), defendant contends that

---

**2.** 12 U.S.C. § 36(c) states in relevant part:

(c) A national banking association may, with approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town, or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State banks. . . . Except as provided in the immediately preceding sentence, no such association shall establish a branch outside of the city, town, or village in which it is situated unless it has a combined capital stock and surplus equal to the com-

bined amount of capital stock and surplus, if any, required by the law of the State in which such association is situated for the establishment of such branches by State banks, or, if the law of such state requires only a minimum capital stock for the establishment of such branches by State banks, unless such association has not less than an equal amount of capital stock.

**3.** *See* Bank Holding Company Act, 12 U.S.C. § 1841, *et seq.*

**4.** The National Bank Act is found at 12 U.S.C. § 1, *et seq.*

**5.** Michigan National Corporation owns 100% of the voting stock of Michigan National Bank—Grand Traverse, less directors' qualifying shares, and approximately 99% of the voting stock of Michigan National Bank—Lansing. It is alleged in the Complaint that Applicant herein is operated under the domination and control of Michigan National Bank—Lansing.

the Comptroller is bound by the Federal Reserve Board's determination that Applicant is a national bank and not a branch, and that therefore this case should be dismissed for lack of subject matter jurisdiction.

█ If the establishment of a national bank as a subsidiary of a bank holding company, and the relationship of that bank within the holding company structure, were the determinative issue of this case, this Court would agree with the defendant. That is clearly an issue over which this Court lacks jurisdiction and apparently plaintiff agrees. However, this Court does have jurisdiction to review decisions of the Comptroller under the National Banking Act. Plaintiff argues that that is *all* it seeks, and both parties agree that the standard of review is whether the Comptroller's adjudication was arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law. *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

As the Supreme Court held in *Camp v. Pitts, supra* :

.   .   . In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court. 411 U.S. at 142, 93 S.Ct. at 1244.

█ In this case, the Comptroller has filed an administrative record over 300 pages in length in which he has set forth the background and history of this controversy, the investigations made under his direction, the hearings requested and granted, and the findings in support of his approval of the application. This Court has reviewed the record, and considering it in light of the contentions of the respective parties, concludes that defendant's decision has been adequately explained and has a rational basis. *Camp v. Pitts, supra.*

█ Defendant's ruling that the evidence of "unitary operations" was irrelevant to the issue of *de facto* branch banking operations of members of the Michigan National

Corporation holding company did not deprive plaintiff of due process because that issue had previously been decided by the Federal Reserve Board. The Comptroller is bound by that earlier decision that Applicant, Michigan National Bank—Grand Traverse, is a subsidiary bank. *Whitney National Bank in Jefferson Parish v. Bank of New Orleans, supra.*

Upon consideration of the pleadings, the affidavits and exhibits, the administrative record, the submissions and arguments of counsel, and the entire record herein, this Court finds and concludes that the Comptroller's adjudication was not arbitrary, nor capricious, nor an abuse of discretion, and was otherwise in accordance with law.

Accordingly, there being no genuine issue of any material fact, defendant is entitled to judgment as a matter of law. Defendant's motion to dismiss should be denied. Plaintiff's motion for summary judgment should be denied and plaintiff's motion for a preliminary injunction should be denied as moot.