# WHITNEY NATIONAL BANK IN JEFFERSON PARISH v. BANK OF NEW ORLEANS & TRUST CO. ET AL.

No. 26. Argued November 12, 1964.—Decided January 18, 1965.*

---

*Together with No. 30, *Saxon, Comptroller of the Currency* v. *Bank of New Orleans & Trust Co. et al.*, also on certiorari to the same court.

*Dean Acheson* argued the cause for petitioner in No. 26. With him on the briefs were *Malcolm L. Monroe, Brice M. Clagett* and *Walter J. Suthon III.*

*Ralph S. Spritzer* argued the cause for petitioner in No. 30. On the brief were *Solicitor General Cox, Philip B. Heymann, Morton Hollander* and *David L. Rose.*

*Edward L. Merrigan* argued the cause for respondents. With him on the brief for respondent banks were *A. J. Waechter, Jr., James W. Bean* and *Charles W. Lane.* With him on the brief for respondent Louisiana State Bank Commissioner was *Joseph H. Kavanaugh,* Assistant Attorney General of Louisiana.

Briefs of *amici curiae,* urging affirmance, were filed by *James F. Bell* for the National Association of Supervisors of State Banks, and by *Horace R. Hansen* for the Independent Bankers Association.

MR. JUSTICE CLARK delivered the opinion of the Court.

This suit is a facet of the complicated controversy between the Whitney National Bank of New Orleans (Whitney-New Orleans) and three of its state-chartered

banking competitors over the establishment by Whitney-New Orleans of a national bank (Whitney-Jefferson) in Jefferson Parish, Louisiana, which adjoins the Parish of Orleans. In order to avoid the restrictions of the national banking laws as to branch banking [1] and still tap the banking market in Jefferson Parish, Whitney-New Orleans resorted to the organization of a bank holding company. After approval of the plan by the Federal Reserve Board on May 3, 1962, two of the respondent banks filed this declaratory judgment action on June 9, 1962, seeking a declaration that the Comptroller of the Currency had no power to grant the necessary authority and praying in addition for injunctive relief restraining him from issuing a certificate of authority for the new bank.

Four days later two of the respondent banks petitioned the Board for reconsideration of its approval of the Whitney application. Their petition was denied, and on June 30, 1962, they sought judicial review of the Federal Reserve Board decision in the Court of Appeals for the Fifth Circuit.[2] That suit is presently pending there awaiting our decision here.

Meanwhile, in this suit the United States District Court for the District of Columbia assumed jurisdiction and held on the merits that § 7 of the Bank Holding Company Act of 1956 [3] reserved to the States final authority

---

[1] La. Rev. Stat. § 6:54 (1950) prohibits banks from opening branch offices in parishes other than their home parish, and these geographical limitations are made applicable to national banks by § 23 of the Banking Act of 1933, 12 U. S. C. § 36 (c) (2) (1958 ed.).

[2] Section 9 of the Bank Holding Company Act of 1956, 12 U. S. C. § 1848 (1958 ed.) provides for review of Federal Reserve Board action in the Court of Appeals.

[3] 12 U. S. C. § 1846 (1958 ed.) provides:

"The enactment by the Congress of this chapter shall not be construed as preventing any State from exercising such powers and jurisdiction which it now has or may hereafter have with respect to banks, bank holding companies, and subsidiaries thereof."

to prohibit the opening of subsidiaries of bank holding companies within their borders and that Louisiana had adopted such a law (albeit subsequent to the approval of the plan involved here by the Federal Reserve Board) [4] which prevented the Comptroller from issuing the certificate. A permanent injunction was issued against the Comptroller restraining the' issuance of the authority. 211 F. Supp. 576. On appeal the Court of Appeals upheld the jurisdiction of the District Court, rejecting the contention that the competitor banks lacked standing to sue. It related bank charters to semi-exclusive franchises conferring upon their holders a right to be free from the competition of a branch bank the operation of which was violative of the Banking Act of 1933, 12 U. S. C. § 36 (1958 ed.). On the merits it concluded that the proposed Jefferson Parish bank would be but a branch of Whitney-New Orleans which was prohibited by the Act. It therefore found it unnecessary to pass upon the effect of Louisiana's law prohibiting the opening or operation of subsidiaries by bank holding companies. 116 U. S. App. D. C. 285, 323 F. 2d 290. In view of the tangle in which the parties had thus involved themselves and the national banking laws as well, we granted certiorari. 376 U. S. 948. We have concluded that the District Court for the District of Columbia had no jurisdiction to pass on the merits of the holding company proposal; that appropriate disposition of the controversy cannot be made without further consideration of the case by the Federal Reserve Board, where original exclusive jurisdiction rests; and that since the application for review of its decision is

---

[4] The Board approval was on May 3, 1962, while Louisiana Act No. 275 of 1962, La. Rev. Stat. §§ 6:1001–6:1006 (1962 Supp.), did not become effective until July 10, 1962, at which time the Board's approval was not final, being on review in the Court of Appeals for the Fifth Circuit in *Bank of New Orleans & Trust Co. et al.* v. *Board of Governors of the Federal Reserve System,* No. 19788 (C. A. 5th Cir.).

now pending in the Court of Appeals for the Fifth Circuit, reasonable time should be allowed for that court to act. We, therefore, reverse these judgments and order dismissal of the complaint. But issuance of our judgment is stayed for a period of 60 days in order to give the parties time to move in the Court of Appeals for the Fifth Circuit for an order remanding that case to the Federal Reserve Board; and, in the event of such a remand, to permit the Court of Appeals to issue such orders as will protect its jurisdiction pending final determination of the matter.

## I.

The facts are undisputed. Whitney-New Orleans desired to extend its banking business into the expanding urban areas beyond the Parish of Orleans, its home base. It could not open branches beyond the parish line because Louisiana law, La. Rev. Stat. § 6:54 (1950), applicable to national banks, prohibited its operating a branch bank outside of its home parish. After discussions with the Deputy Comptroller of the Currency it was decided that the bank should establish a holding company (Whitney Holding Corporation) under federal law with a capital of $350,000 taken from the bank's undivided profits and represented by 5,600 shares of stock of the holding company to be distributed to the bank's shareholders. The holding company would then organize a new national bank, the Crescent City National Bank, with the $350,000 it had on hand. Whitney-New Orleans would then be merged into the Crescent City and the resulting bank would be known as Whitney-New Orleans. The new Whitney-New Orleans bank would declare a dividend of $650,000 from its undivided profits which would go to its owner, the holding company. The latter would then organize, with this $650,000, another national bank, Whitney-Jefferson, which would be located in Jefferson Parish. The net result of the maneuver would be that

the original stockholders of the old Whitney-New Orleans would own the holding company which in turn would own and operate both banks, *i. e.,* the new Whitney-New Orleans and Whitney-Jefferson.

Approval of the stockholders of Whitney-New Orleans was first obtained, over 88% of the shares voting for the plan. It was then submitted to the Comptroller who on October 3, 1961, gave preliminary approval, subject to the action of the Federal Reserve Board and the consummation of the various transactions outlined. On July 14, 1961, applications were filed with the Board; thereafter notice was published in the Federal Register and three potential competitors expressed opposition. However, none of the respondents appeared or made any filings. After receiving the advice of the Comptroller pursuant to § 3 (b) of the Bank Holding Company Act of 1956, 12 U. S. C. § 1842 (b) (1958 ed.), which was favorable, the Board ordered a public proceeding to be held on January 17, 1962, "to afford further opportunity for the expression of views and opinions by interested persons." At this hearing testimony was heard and opposition submitted by objecting stockholders and potential competitors but none of the respondents took any part therein. The Board by a 6–1 vote approved the plan on May 3, 1962. This suit was filed on June 9, 1962. Thereafter on June 13, 1962, a petition for reconsideration was filed with the Federal Reserve Board by two of the respondent banks and was later joined by the Bank Commissioner of Louisiana. This application was denied on the ground of untimeliness and because the Board found it "without substantial merit." The application for judicial review was then filed on June 30, 1962, with the Court of Appeals for the Fifth Circuit pursuant to § 9 of the Bank Holding Company Act of 1956, 12 U. S. C. § 1848 (1958 ed.). That case, as we have said, awaits our decision here.

## II.

The Bank Holding Company Act of 1956 prohibits a bank holding company from acquiring ownership or control of a national bank, new or existing, without the approval of the Federal Reserve Board. 12 U. S. C. § 1842 (a) (1958 ed.). Provision is made for a full administrative proceeding before the Board in which all interested persons may participate and the views of the interested supervisory authorities may be obtained. 12 U. S. C. § 1842 (b) (1958 ed.). The Board's determination is subject to judicial review by specified courts of appeals which must accept the administrative findings if they are supported by substantial evidence. 12 U. S. C. § 1848 (1958 ed.).

Thus, if the plan here merely encompassed the acquisition of an existing national bank already enjoying the Comptroller's certificate of authority to do business, only the approval of the Board would be necessary, and the Comptroller would be involved only to the extent that he provided his views and recommendations. But, of course, this is not the case. Here it is a newly created national bank not yet authorized to do business that is sought to be organized and operated by a bank holding company. This authorization is the sole function of the Comptroller, requiring his appraisal of the bank's assets, directorate, etc., and his action is therefore necessary in addition to that of the Board approving the organization of the bank by the holding company. It is against this background that we inquire whether the questions raised by the respondents in the District Court against the Comptroller were cognizable by the Board.

## III.

We think it clear that the thrust of respondents' complaint goes to the organization of Whitney-Jefferson by the holding company rather than merely the issuance of

authority to Whitney-Jefferson to do business. Respondents' chief contention is that Whitney-Jefferson would be but a branch bank of Whitney-New Orleans. But this would not follow simply by virtue of the issuance of authority for the opening of the new bank. Such a situation would occur, if at all, when the Board approved the holding company plan including the organization of Whitney-Jefferson as its subsidiary. Thus, it is the plan of organization by the holding company which lies at the heart of respondents' argument.

The Bank Holding Company Act of 1956 directs the Board to consider both "the convenience, needs, and welfare of the communities and the area concerned" and "whether or not the effect of such acquisition . . . would be to expand the size or extent of the bank holding company system involved beyond limits consistent with . . . the public interest . . . ." 12 U. S. C. §§ 1842 (c)(4) and (5) (1958 ed.). Clearly, if respondents' argument that Whitney-Jefferson would be a branch bank were sound, the Board would be compelled to disapprove the arrangement, for a plan of organization violative of federal law would hardly be consistent with the statutory command that no bank holding company should be expanded beyond the limits consistent with the public interest.

The respondents also argue that the operation of Whitney-Jefferson is barred by a valid state law prohibiting any subsidiary of a bank holding company from opening for business "whether or not, a charter, permit, license or certificate to open for business has already been issued." Here, as with their first argument, respondents' quarrel is in actuality not merely with the opening of the bank, but rather with its opening as a subsidiary of Whitney Holding Corporation. Otherwise, the opening would not be prohibited by Louisiana law. Again,

the Board could not approve a holding company arrangement involving the organization and opening of a new bank if the opening of the bank, by reason of its ownership by a bank holding company, would be prohibited by a valid state law.[5]

We therefore conclude that respondents' complaint tenders issues cognizable by the Federal Reserve Board, and we turn to the question of whether such objections must first be raised there.

## IV.

We believe Congress intended the statutory proceedings before the Board to be the sole means by which questions as to the organization or operation of a new bank by a bank holding company may be tested. Admittedly the acquisition of an existing bank is exclusively within the jurisdiction of the Board. We know of no persuasive reason for finding a different procedure required where it is a new bank that is sought to be organized and operated simply because the Comptroller there performs a function in addition to that of the Board, i. e., the issuance of the certificate to do business.

Moreover, the Bank Holding Company Act makes the Board's approval of a holding company arrangement binding upon the Comptroller. A provision designed to make the decision of the Comptroller, rather than that of the Board, final was rejected when the Act was being framed. 101 Cong. Rec. 8186–8187. This legislative history clearly indicates that Congress had no intention to give the Comptroller a veto over the Board in such cases. It follows that it is the exclusive function of the Board to act in such cases and contests must be pursued

---

[5] The Board has indicated that in its view § 7 of the Act permits the States to prohibit the formation of bank holding companies. See *Trans-Nebraska Co.*, 49 Fed. Res. Bull. 633 (1963).

before it, not before the Comptroller. This position is also supported by legislative history which shows that Congress rejected a proposal for a *de novo* review in the district courts of Board decisions on holding company proposals. Compare 12 U. S. C. § 1848 (1958 ed.) and S. Rep. No. 1095, pt. 1, 84th Cong., 1st Sess., 9, and pt. 2, 84th Cong., 2d Sess., 5, with § 9 of H. R. 6227, 101 Cong. Rec. 8187, and H. R. Rep. No. 609, 84th Cong., 1st Sess., 22, 25–26. Such a procedure would have been similar to that employed here against the Comptroller by respondents. However, the Congress decided otherwise, providing instead for review in the courts of appeals based on the facts found by the Board supported by substantial evidence. We think these congressional actions point clearly to the conclusion that it intended that challenges to Board approval of the organization and operation of a new bank by a bank holding company be pursued solely as provided in the statute.

This view is confirmed by our cases holding that where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive. See, *e. g., Callanan Road Improvement Co.* v. *United States,* 345 U. S. 507 (1953); *Myers* v. *Bethlehem Shipbuilding Corp.,* 303 U. S. 41 (1938); *Texas & Pac. R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426 (1907). Congress has set out in the Bank Holding Company Act of 1956 a carefully planned and comprehensive method for challenging Board determinations. That action by Congress was designed to permit an agency, expert in banking matters, to explore and pass on the ramifications of a proposed bank holding company arrangement. To permit a district court to make the initial determination of a plan's propriety would substantially decrease the effectiveness of the statutory design. As we stated in

*Far East Conference* v. *United States*, 342 U. S. 570 (1952):

"[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." At 574–575.

Here the Court of Appeals held that the relationship of Whitney-Jefferson to Whitney-New Orleans would be that of a branch bank notwithstanding the fact that they were organized under a bank holding company arrangement. The District Court found the proposal barred by Louisiana Act No. 275 of 1962. We believe that these are the very types of questions that Congress has committed to the Board, and we hold that the Board should make the determination of the plan's propriety in the first instance. The soundness of this conclusion is especially evident when it is remembered that the Board has played a vital role in the development of the national banking laws, a role which makes its views of particular benefit to the courts where ultimately the validity of the arrangement will be tested.

Moreover, we reject the notion that the Board's determination may be collaterally attacked in the District

Court by a suit against the Comptroller. Opponents of the opening of a new bank by a bank holding company must first attack the arrangement before the Board, subject only to review by the Courts of Appeals. *City of Tacoma* v. *Taxpayers of Tacoma,* 357 U. S. 320 (1958); *United States* v. *Corrick,* 298 U. S. 435 (1936). That Congress has not expressly provided that the statutory procedure is to be exclusive does not require a different conclusion. For Congress has expressly rejected proposed provisions for review in these cases in the district. courts. Moreover, it has enacted a specific statutory scheme for obtaining review, and where Congress has directed such a procedure as that found in the Bank Holding Company Act of 1956, the doctrine of exhaustion of administrative remedies comes into play and requires that the statutory mode of review be adhered to notwithstanding the absence of an express statutory command of exclusiveness.

A rejection of this doctrine here would result in unnecessary duplication and conflicting litigation. Some opponents might participate before the Board; others might well wait for termination of the Board's activities and then sue in the district courts for an injunction accomplishing the same ultimate end. The different records, applications of different standards and conflicting determinations that would surely result from such duplicative procedures all militate in favor of the conclusion that the statutory steps provided in the Act are exclusive.

Respondents attempt to ground support for the District Court's asserted jurisdiction on the Administrative Procedure Act, 5 U. S. C. §§ 1001, 1009 (1958 ed.), which provides that "Every . . . final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. . . ." The short answer to this, of course, is, as we have pointed out, that the Comptroller's action in issuing a certificate is not "final"; it is

the action of the Board permitting consummation of the organization of the new bank by the holding company that is final, and its decision is subject to review only in the courts of appeals, not before the Comptroller or in the district courts.

Furthermore, the respondents contend that no provisions for review of the Comptroller's decision are included in any of the pertinent Acts; indeed, they say, he has admitted as much in this case. Respondents again overlook the fact that the decision here approving the organization of the Whitney-Jefferson Bank is not for the Comptroller. He only checks the condition of the new bank, its capital, directorate, etc., as provided by the National Bank Act. 12 U. S. C. § 26 (1958 ed.). That the action of the Comptroller is not final is made crystal-clear here where, assuming he should issue the desired authority to Whitney-Jefferson to open for business, it would be completely negated in the event that on review the Board's approval of the holding company plan was reversed. As we have said, it is the ownership of Whitney-Jefferson by the holding company that is at the heart of the project, not the permission to open for business which is acted upon routinely by the Comptroller once the authority to organize is given by the Board.

We do not say that under no circumstances may the Comptroller be restrained in equity from issuing a certificate to a new bank. We do hold, however, that where a bank holding company seeks to open a new bank pursuant to a plan of organization the propriety of which must, under the Bank Holding Company Act, be determined by the Board, the statutory review procedure set out in the Act must be utilized by those dissatisfied with the Board's ruling despite the fact that the Comptroller's certificate is a necessary prerequisite to the opening of the bank. Otherwise the commands of the Congress would be completely frustrated.

## V.

It is for this reason that the Fifth Circuit case reviewing the Board's former action should be remanded to it. Section 3 (5) of Louisiana Act No. 275 of 1962, La. Rev. Stat. § 6:1003 (5) (1962 Supp.), provides that "It shall be unlawful . . . for any bank holding company or subsidiary thereof to open for business any bank not now opened for business, whether or not, a charter, permit, license or certificate to open for business has already been issued. . . ." [6] This Act was passed on July 10, 1962, several days after the Board denied respondents' petition for reconsideration. It was not considered by the Board as one of the factors in the application for registration as a bank holding company. The petition for review, attacking the Board's determination before the Fifth Circuit, is, of course, not before this Court. Nevertheless it is perfectly obvious that the two cases are closely related. We have discussed earlier the importance which Congress has attached in the Bank Holding Company Act of 1956 to the principle that the Federal Reserve Board, with its expertise in the banking field, should make the initial determination of the propriety of the plan of organization giving full consideration to the legislative guidelines set out in the Act. Section 7 of the Bank Holding Company Act of 1956, 12 U. S. C. § 1846 (1958 ed.), provides:

"The enactment by the Congress of this chapter shall not be construed as preventing any State from exercising such powers and jurisdiction which it now has or may hereafter have with respect to banks, bank holding companies, and subsidiaries thereof."

---

[6] Our disposition obviates the necessity of passing upon the contention of the petitioners that Louisiana's law is invalid under the Supremacy Clause and the Equal Protection Clause.

Here the Board has not had an opportunity to determine the applicability and effect of the new Louisiana statute. We are of the opinion that this is the very type of question that Congress envisioned as being resolved in the first instance by the Board. In line with this legislative policy, and in the interest of judicial economy and proper administrative practice, the Board should have an opportunity to act in the light of Louisiana's new law. It is for this reason that we give the parties not exceeding 60 days to proceed before the Court of Appeals for the Fifth Circuit to secure such a remand.

It appears from the record that the Comptroller advised the District Court that "if the preliminary injunction entered herein is vacated, and if Whitney National Bank in Jefferson Parish so requests, inasmuch as upon a careful examination of the facts within my knowledge it appears that such association is lawfully entitled to commence the business of banking, it is my present intention to issue such certificate." R. 310. Our disposition, however, does not free the Comptroller to authorize the opening of the bank, for the Court of Appeals has the power to prevent the issuance of the certificate pending final disposition of the matter. As the Comptroller himself notes, the certificate may issue only when the applicant is "lawfully entitled to commence the business of banking." It would not be "lawfully entitled" to open in the event the Court of Appeals stayed the order of approval of the Federal Reserve Board pending final disposition of the review proceeding. The court, of course, is empowered under 28 U. S. C. § 1651 (1958 ed.) to do so. See *Scripps-Howard Radio, Inc.* v. *FCC,* 316 U. S. 4 (1942); *Board of Governors of Federal Reserve System* v. *Transamerica Corp.,* 184 F. 2d 311 (1950). In the event such a stay were issued we feel certain that the Comptroller would not

attempt to issue the certificate.[7] But if he did and the Court of Appeals should find it necessary to take direct action to maintain the status quo and prevent the opening of the bank, it has ample power to do so. The Whitney Holding Corporation, a party presently before the Fifth Circuit, owns and controls both banks and through it the court could reach the technical applicant, Whitney-Jefferson. We think it clear that the Court of Appeals can appropriately fashion an order designed to compel Whitney Holding Corporation not only to refrain from acting itself but to require that its subsidiary refrain from requesting the certificate and from opening the bank. Indeed, upon proper application by the respondents the Court of Appeals could stay the hand of Whitney-Jefferson itself since it is within the jurisdiction of that court. It is sufficient to say here that the Fifth Circuit's power to protect its jurisdiction is beyond question.

In the instant proceedings, the judgments of the Court of Appeals are reversed and the case is remanded to the District Court with direction to dismiss the complaint. Issuance of our judgment is stayed for 60 days to afford the parties opportunity to proceed as outlined in this opinion.

*It is so ordered.*

---

[7] As we have said there may be exceptional circumstances under which equity may stay the hand of the Comptroller in issuing a certificate to a new bank. Obviously if the holding company application has not been acted upon by the Board, the Comptroller would have no power to issue the certificate and his persistence in doing so would subject him to the temporary orders of a court of competent jurisdiction.

Such an action would not require an impermissible collateral attack on the merits of the proposal, which are reserved for the Board. Its sole purpose would be to prevent the Comptroller from acting without the Board's approval—an objective that would protect the jurisdiction of the reviewing court of appeals rather than run afoul of it.

MR. JUSTICE DOUGLAS, dissenting.

I dissent from the ruling of the Court that the District Court for the District of Columbia has no jurisdiction over this present controversy with the Comptroller of the Currency.

Two federal agencies are involved in this bank acquisition program:

The Federal Reserve Board has jurisdiction under the Bank Holding Company Act of 1956 to grant or deny an application by a holding company of the right to acquire the shares of any bank. 12 U. S. C. § 1842.

The Comptroller of the Currency has jurisdiction under the National Bank Act to license the opening of a banking operation where it appears that the applicant "is lawfully entitled to commence the business of banking." 12 U. S. C. § 27.

It is thus apparent, that the two administrative proceedings involve different, though related, matters; different, though related, applicants; and different, though related, issues.

The decision of the Board is subject to review in the Court of Appeals as provided in 12 U. S. C. § 1848. But, as stated by the Solicitor General, "The National Bank Act . . . makes no provision for an administrative hearing or for judicial review, and the Comptroller's decisions are made informally, without an administrative record." The courts, however, have held that judicial cognizance of a controversy with the Comptroller may be taken and judicial power exercised to keep the Comptroller within statutory bounds. *Camden Trust Co.* v. *Gidney,* 112 U. S. App. D. C. 197, 301 F. 2d 521; *Union Savings Bank* v. *Saxon,* 118 U. S. App. D. C. 296, 298, 335 F. 2d 718, 720, and cases cited. That conclusion is consistent with our holding in *Columbia Broadcasting System, Inc.* v. *United States,* 316 U. S. 407, 423–424, that, absent a congressional

design to bar all judicial review (*Switchmen's Union* v. *National Mediation Board*, 320 U. S. 297), injunctive relief is available where administrative remedies are either inapplicable or inadequate. This rule keeps the Comptroller from being a free-wheeling agency dispensing federal favors; and it gives some assurance that he will render principled decisions within the rule of law laid down by Congress.

The facts of this case dramatize the importance of the jurisdiction of the District Court. Shortly after the Board's final action in this case, and before review of its action by the Court of Appeals had been sought, Louisiana passed a law (La. Rev. Stat. §§ 6:1001 to 6:1006 (1962 Supp.)) which provides in pertinent part: "It shall be unlawful . . . for any bank holding company or subsidiary thereof to open for business any bank not now opened for business . . . ." The Bank Holding Company Act, 12 U. S. C. § 1846, specifically reserves to the States a broad power seemingly sufficient to bar bank holding companies or their subsidiaries from extending their domains.[1]

In spite of the pending review of the Board's order in the Court of Appeals and in spite of the intervening Louisiana law, the Comptroller on August 9, 1962, advised the District Court in affidavit form:

"Upon consideration of these subsequent developments, and after careful examination of the Louisiana statute, I have concluded that there has occurred no reason to alter the Comptroller's prior determina-

---

[1] Section 7 of the Act reads as follows:

"The enactment by the Congress of this chapter shall not be construed as preventing any State from exercising such powers and jurisdiction which it now has or may hereafter have with respect to banks, bank holding companies, and subsidiaries thereof." 12 U. S. C. § 1846.

·tion that a certificate of authority should be issued to Whitney National Bank in Jefferson Parish, pursuant to 12 U. S. C. § 27.

"Accordingly, if the preliminary injunction entered herein is vacated, and if Whitney National Bank in Jefferson Parish so requests, inasmuch as upon a careful examination of the facts within my knowledge it appears that such association is lawfully entitled to commence the business of banking, it is my present intention to issue such certificate." [2]

This threat makes a mockery of the Solicitor General's assurance that the parties have a full and adequate remedy in the Court of Appeals review of the Board's order and of his position that the present suit is designed as a collateral attack on the review of that order. For without the injunction issued by the District Court the Comptroller candidly states that the new branch bank

[2] The Comptroller and the applicant bank, Whitney-Jefferson, made a speedy accommodation as shown in Whitney-Jefferson's brief in this Court:

"On May 10, 1962, Whitney-Jefferson executed and delivered to the new Comptroller of the Currency its articles of association and its certificate of organization, thereby establishing its corporate existence as a national banking association in accordance with 12 U. S. C. § 24. On May 18, 1962, the Comptroller approved the final corporate formalities necessary to complete the program. On May 24, 1962, the duly elected and qualified directors of Whitney-Jefferson adopted by-laws and took action by which the new bank became a member of the Federal Reserve System.

"Thereafter, the sole remaining legal step necessary to permit the opening of Whitney-Jefferson for business was the issuance to it by the Comptroller, under 12 U. S. C. § 27, of a certificate authorizing it to commence the business of banking. The Comptroller was about to issue such a certificate when this action was commenced on June 9, 1962. Whitney-Jefferson was prepared to open its doors for business, and would have commenced operations virtually as soon as it received a certificate."

would be in business, flouting the new Louisiana law, whose prototype we have already sustained.[3]

The ruling of the Court that the District Court had no jurisdiction in this case promises serious consequences. It means there may be an hiatus during which the Comptroller can take the law into his own hands without restraint from anyone. The Court looks to the Court of Appeals to give protection during that hiatus. In this case the Board of Governors of the Federal Reserve System approved the holding company application on May 3, 1962. The action in the District Court was filed on June 9, 1962. But judicial review of the Board's action by the Court of Appeals was not sought until June 30, 1962.

If respondents had accelerated their review of the Board's action, they still would not have had any protection against the Comptroller for he was not a party to the action in the Court of Appeals; and as the record shows if he had been freed from the restraint of the District Court, his alliance with Whitney-Jefferson would have resulted in a flouting of the law.

Whitney-Jefferson, moreover, was not a party in the Fifth Circuit proceeding. Nor will either the applicant "branch bank" or the holding company normally be a party to the appeal in the Court of Appeals. The statute providing for judicial review of a Board order at the instance of the "party aggrieved" does not make them parties. 12 U. S. C. § 1848. The governing rule of the Court

---

[3] See *Braeburn Securities Corp.* v. *Smith,* 15 Ill. 2d 55, 153 N. E. 2d 806, where a state statute forbade holding-company shareholders from acquiring stock of national banks. We dismissed the appeal "for want of a substantial federal question." 359 U. S. 311. Accord: *Trans-Nebraska Co.,* 49 Fed. Res. Bull. 633, 638 (1963). That decision was in line with federal policy of making state law the standard when it comes to certain kinds of branch banking. See *United States* v. *Philadelphia National Bank,* 374 U. S. 321, 328.

of Appeals for the Fifth Circuit says that the "agency, board, commission or officer concerned shall be named as respondent"; but it is nowhere provided that those who were successful before the board or agency shall also be made respondents. Rule 39, 28 U. S. C. A. As it happens, Whitney Holding Corporation seems to have intervened in 'the appeal to support the Board. But this is a fortuitous circumstance. After today's decision it will no doubt occur to those who find themselves in Whitney's position that possibly they. may, with the help of the Comptroller, be able to open their doors for business in defiance of state law simply by staying out of the review proceeding in the Court of Appeals and keeping their holding company master out of it also. Perhaps, as the Court suggests, the Court, of Appeals will always be able to find the means to prevent such an eventuality by resort to 28 U. S. C. § 1651; perhaps it will not. But there can be no doubt that maintenance of the jurisdiction of the District Court is essential both for keeping the dual jurisdiction of the Board and of the Comptroller from a collision course and for keeping the Comptroller within bounds of the law.

I also dissent from remitting the constitutionality of the Louisiana Act to the Federal Reserve Board and thus giving administrative "expertise" new and surprising dimensions.

Heretofore we have remitted causes to federal agencies where "issues of fact not within the conventional experience of judges" are raised or where the case requires "the exercise of administrative discretion." *Far East Conference* v. *United States,* 342 U. S. 570, 574. Here the facts are known and the bare, bald question of the constitutionality of Louisiana's law is tendered. It is presented in this action in the District Court; the Comptroller threatens to flout that law; yet if it is a valid law, the new bank is not "lawfully entitled to commence the

business of banking" within the meaning of the National Bank Act, 12 U. S. C. § 27. I would decide that issue here and now.

MR. JUSTICE BLACK, dissenting.

For the reasons given in his dissenting opinion, I agree with my Brother DOUGLAS that the District Court has jurisdiction over this controversy and that the question of the Louisiana Act's constitutionality should not be remitted to the Federal Reserve Board, and I join his dissent on both those points. I would go further, however, and affirm the District Court's judgment. As pointed out in MR. JUSTICE DOUGLAS' dissent, Louisiana now has a law making it unlawful for any bank holding company to open for business in that State and Congress has consented for States to pass such a law. Accordingly, neither the Comptroller nor the Federal Reserve Board has power to permit the Whitney Holding Corporation to open a bank in Louisiana. Under these circumstances there is no reason whatever, except an entirely technical one, to let the litigation over this matter proceed any further. I would therefore end it by affirming the judgments of the Court of Appeals affirming the judgment of the District Court, a disposition which would, of course, call for a dismissal of the related controversy now pending in the Court of Appeals for the Fifth Circuit.