MEMPHIS TRUST COMPANY,
Plaintiff-Appellee,

v.

BOARD OF GOVERNORS OF the
FEDERAL RESERVE SYSTEM,
Defendant-Appellant.

No. 76–2183.

United States Court of Appeals,
Sixth Circuit.

Argued April 6, 1978.

Decided Sept. 22, 1978.

Thomas F. Turley, Jr., U. S. Atty., William A. McTighe, Jr., Asst. U. S. Atty., Memphis, Tenn., Ronald R. Glancz, Michael Kimmel, Freddie Lipstein, Dept. of Justice, Civil Div., App. Section, Washington, D.C., for defendant-appellant.

Rubel L. Phillips, Perry, Phillips, Crockett, Morrison & Herring, Thomas W. Crockett, Jr., Jackson, Miss., for plaintiff-appellee.

Before EDWARDS and KEITH, Circuit Judges, and RUBIN, District Judge.*

KEITH, Circuit Judge.

The Board of Governors of the Federal Reserve System (hereinafter Board) appeals from a decision of the district court granting summary judgment to the Memphis Trust Company and ordering the Board to allow Memphis Trust to acquire the shares of the Homeowners Savings and Loan Association (hereinafter Homeowners) of Collierville, Tennessee. We reverse and remand with instructions to dismiss the complaint for lack of jurisdiction over the subject matter.

I.

Memphis Trust Company (hereinafter the bank) is a bank holding company within the meaning of the Bank Holding Company Act of 1956 (hereinafter the Act), as amended, 12 U.S.C. §§ 1841 *et seq.* (1976). Homeowners is a savings and loan association engaged in non-banking activity within the

---

* The Honorable Carl B. Rubin, United States District Judge for the Southern District of Ohio, sitting by designation.

meaning of section 4 of the Act, 12 U.S.C. § 1843. On September 7, 1973, the bank submitted to the Federal Reserve Bank of St. Louis, Missouri, its application to acquire one hundred per cent of the shares of Homeowners, in accordance with 12 U.S.C. § 1843(c)(8) (1976),[1] and the Board's regulation. 12 C.F.R. § 225.4(b)(2) (1977). The Federal Reserve Bank of St. Louis submitted this application to the Board on October 11, 1973. The Board requested and received additional supplemental information from the bank. All material which the Board requested from outside sources such as the bank, and which constituted the complete record on this application, was received by the Board staff on or before January 8, 1975.

The Board denied the bank's application in an order dated April 10, 1975, 92 days after the record on the application had been received.[2] Section 4(c) of the Act, 12 U.S.C. § 1843(c), provides in part:

1. Section 4(c)(8) of the Act provides that the prohibitions against the acquisition of voting shares of any company not a bank by a bank holding company shall not apply to:
   shares of any company the activities of which the Board after due notice and opportunity for hearing has determined (by order or regulation) to be so closely related to banking or managing or controlling banks as to be a proper incident thereto. In determining whether a particular activity is a proper incident to banking or managing or controlling banks the Board shall consider whether its performance by an affiliate of a holding company can reasonably be expected to produce benefits to the public, such as greater convenience, increased competition, or gains in efficiency, that outweigh possible adverse effects, such as undue concentration of resources, decreased or unfair competition, conflicts of interests, or unsound banking practices. In orders and regulations under this subsection, the Board may differentiate between activities commenced de novo and activities commenced by the acquisition, in whole or in part, of a going concern;
   12 U.S.C. § 1843(c)(8).

2. The Board did not concede below that it failed to act on the bank's application within 91 days of the date of submission of the complete record. Appellant's Br. at 31. The Board contends that the district court's entry of summary judgment for the bank was improper. *See* n. 6, *infra.*

3. Section 9 of the Act provides:

In the event of the failure of the Board to act on any application for an order under paragraph (8) of this subsection within the ninety-one-day period which begins on the date of submission to the Board of the complete record on that application, the application shall be deemed to have been granted.

However, section 9 of the Act, 12 U.S.C. § 1848 (1976), provides that a party aggrieved by an order of the Board must file a petition to set aside the order in a court of appeals within 30 days after the entry of the order.[3] The bank did not challenge the April 10th order under this statute. Instead, the bank elected to pursue discussions with Board staff members to determine the feasibility of resubmitting its application to acquire Homeowners. On October 24, 1975, the bank's president and general counsel met with the Director of the Board's Division of Banking Supervision and Regulation and two of his staff to

Any party aggrieved by an order of the Board under this chapter may obtain a review of such order in the United States Court of Appeals within any circuit wherein such party has its principal place of business or in the Court of Appeals in the District of Columbia, by filing in the court, within thirty days after the entry of the Board's order, a petition praying that the order of the Board be set aside. A copy of such petition shall be forthwith transmitted to the Board by the clerk of the court, and thereupon the Board shall file in the court the record made before the Board, as provided in section 2112 of title 28. Upon the filing of such petition the court shall have the jurisdiction to affirm, set aside, or modify the order of the Board and to require the Board to take such action with regard to the matter under review as the court deems proper. The findings of the Board as to the facts, if supported by substantial evidence, shall be conclusive.

12 U.S.C. § 1848. As enacted in 1956, section 9 of the Act granted an aggrieved party 60 days within which to seek judicial review of a Board order under this chapter. Act of May 9, 1956, c. 240, § 9, 70 Stat. 138. This section was amended in 1966 to reduce the time limit to the present 30 days. Act of July 1, 1966, Pub.L. 89–485, § 10, 80 Stat. 240. The Senate report accompanying the 1966 bill noted that "[t]hirty days, as is now provided in bank merger cases, would seem to be ample." S.R.No.1179, 89th Cong., 2d Sess. 10 (1966), *reprinted in,* 1966 U.S.Code Cong. & Admin.News, pp. 2385, 2394.

discuss this issue.[4] The staff indicated that in their opinion the Board would not approve another application by the bank to acquire Homeowners unless Homeowners became a federally insured savings and loan association, and the bank's financial condition improved.

Coincidentally, on the same day, the United States Court of Appeals for the Seventh Circuit handed down its decision in *Tri-State Bancorporation, Inc. v. Board of Governors of the Federal Reserve System,* 524 F.2d 562 (7th Cir. 1975), holding that the 91-day time limit within which the Board had to act on an application filed under section 3(b) of the Act began to run from the date when all requested information from outside sources was received by the Board staff, and not from the date when the Board staff reports were completed and the application was forwarded to the Board for action.[5] 524 F.2d at 566. Subsequently, on December 1, 1975, the Board, through its Secretary, circulated a letter to all Federal Reserve Bank presidents and officers in charge of branches discussing the impact of the *Tri-State Bancorporation* opinion on the Board's procedures. The following passage from the letter is of relevance to this litigation:

> Subsequent to the Tri-State decision, Board staff received a number of inquiries concerning the effect of that ruling on pending applications, as well as on applications that have previously been denied by the Board in circumstances where, prior to the issuance of the denial order,

more than 91 days had elapsed, measured in accordance with the Seventh Circuit's interpretation. Ultimate determination of these questions will, of course, rest with the courts. However, the Board's present position with respect to certain situations as to which interested parties may raise questions on the running of the 91-day period is as follows:

> 1. Any denial order heretofore issued by the Board in a holding company application case, as to which no timely petition for review was filed in accordance with the provisions of section 9 of the Bank Holding Company Act, is considered by the Board to be a final and effective order of denial, irrespective of whether the 91-day period elapsed prior to the issuance of the order.

Appendix at 25a.

On December 8, 1975, the bank's president wrote to the Board's Secretary and, citing *Tri-State Bancorporation, supra,* requested the Board's acknowledgement that the application to acquire Homeowners was granted as a matter of law since the Board had not acted upon it within the 91-day period required by statute. The Board's Secretary responded by letter dated December 19, 1975. He referred to his letter of December 1, 1975, and stated that it was the Board's position that in any case in which a denial order had been issued, and no timely petition for review had been filed, the denial order was final, regardless of whether the 91-day time period had elapsed prior to the entry of the order. He noted

---

**4.** Affidavit of Brenton C. Leavitt, Dr., Division of Banking Supervision and Regulation, dated April 14, 1976.

**5.** The court stated:

> We hold that the 91-day period of § 1842(b) begins to run when the final material needed for the Fed's decision is received from various interested sources outside of the Fed, which ordinarily would be the applicant and governmental agencies other than the Fed. . . . In our opinion, staff reports and recommendations of the Fed are no part of the "complete record" within the statutory contemplation. Such internal communications are merely a part of the decisional process in determining the result to be reached on the basis of the record which has been sub-

mitted. . . . While in a broad and loose sense it might be said that every document in the case file was a part of the record, it is our view that the Congressional intent here was to define "complete record" as meaning the facts upon which the agency would pass, not the internal documents relating to the process of that passing.
524 F.2d at 566.

> *Tri-State Bancorporation* involved an application under section 3(b) of the Act, 12 U.S.C. § 1842(b), for approval of formation of a bank holding company. Section 3(b) contains a 91-day provision identical to the one found in section 4(c) of the Act. The holding in *Tri-State Bancorporation* is directly applicable to the case at bar.

that the bank had not filed a timely petition for review of the Board's order of April 10, 1975, and concluded:

> A final Order of denial exists with respect to the application to acquire Homeowners Savings and Loan Association, and the application cannot be deemed to have been granted. You should be informed that an attempt by Memphis Trust to consummate the acquisition now, based upon a contention that the application had been granted by operation of law, would be viewed as a violation of the Bank Holding Company Act.

Appendix at 29a.

Two months later, ten months after the Board's order had been released, the bank brought this action in the district court for a writ of mandamus and declaratory and injunctive relief to enable it to acquire Homeowners. The court granted summary judgment for the bank. The Board appeals.[6]

## II.

The threshold question is one of jurisdiction. The bank did not seek judicial review of the April 10th order,[7] and did not petition the Board to reconsider its order.[8] The

---

**6.** The Board filed a motion in the district court to dismiss the complaint for failure to state a claim upon which relief could be granted, Rule 12(b)(6), Fed.R.Civ.P., and for lack of jurisdiction over the subject matter, Rule 12(b)(1) Fed. R.Civ.P. The bank filed a response in opposition to this motion. Both parties waived oral argument. The district court then construed the Board's Rule 12(b)(6) motion as a motion for summary judgment and granted summary judgment to the plaintiff bank, without prior notice to either party. The Board assigns as error the district court's decision to treat its motion to dismiss as plaintiff's motion for summary judgment without notice to the parties and without affording the Board an opportunity to respond prior to the entry of judgment. We agree that the procedure used by the district court was improper.

> [W]henever the court believes that the non-moving party is entitled to judgment, great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law.

10 Wright & Miller, *Federal Practice & Procedure*: Civil § 2270 at 471 (1973). *See also Kistner v. Califano*, 579 F.2d 1004 (6th Cir. 1978). Rule 12(b) provides that when a Rule 12(b)(6) motion is treated as one for summary judgment, and disposed of as provided in Rule 56, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." However, we do not remand this case to the district court for further proceedings for failure to comply with the notice provisions of Rule 56, in light of our holding that the district court was without jurisdiction to hear this action.

**7.** The bank argued in the district court that it did not appeal from the April 10th order of the Board because

> The Board had, on November 14, 1972, advised the Association of Registered Bank Holding Companies that it construed the 91-day provision of Section 4(c) of the Act as

meaning that '. . . such period begins to run when, in the judgment of the staff, all information needed to reach a decision in a specific application has been presented to the Board for its consideration.' In the absence of Judicial (sic) construction of the Board's interpretation at that time, Memphis Trust was bound by the Board's construction of the 91-day provision and further, Memphis Trust had no way of knowing when the staff had determined that it had sufficient information to reach a decision on the application. (Footnotes omitted.)

Br. in response to Motion to Dismiss at 4–5. Of course, the bank could have obtained a judicial interpretation of the Board's construction of the 91-day provision if it had brought an action to set aside the April 10 order. Presumably, the petitioner in *Tri-State Bancorporation, Inc. v. Board of Governors of the Federal Reserve System,* 524 F.2d 562 (7th Cir. 1975), was faced with the same statutory construction before it brought its action to set aside a Board order as untimely.

**8.** Objections to the proceedings of administrative agencies should ordinarily be raised before those agencies for determination before judicial review is sought and obtained. *Blackstone Valley National Bank v. Board of Governors of the Federal Reserve System,* 537 F.2d 1146 (1st Cir. 1976); *Bank of Commerce v. Board of Governors of the Federal Reserve System,* 513 F.2d 164 (10th Cir. 1975); *First National Bank of St. Charles v. Board of Governors of the Federal Reserve System,* 509 F.2d 1004 (8th Cir. 1974). Although an administrative agency does not finally determine the limits of its own jurisdiction, *Social Security Board v. Nierotko,* 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946), the facts of this case persuade us that the Board should be afforded an initial opportunity to rule upon the challenge to its jurisdiction to issue and enforce a denial order entered over 91 days after the complete record and the bank's section 4(c)(8) application had been received. *See Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed.2d 638 (1938).

Board's regulations provide that a party may request the Board to reconsider an order. *See* 12 C.F.R. § 262.3(g)(5) (1977). The Board acts upon a request for reconsideration by order. *See* 12 C.F.R. § 262.3(e) (1977). The Board has not delegated this authority to its Secretary. 12 C.F.R. § 265.2 (1977). Therefore, the Secretary's letter of December 1, 1975, stating the Board's general policy in light of *Tri-State Bancorporation, supra*, and his letter to the bank's president on December 19, 1975, were not Board "orders" within the meaning of the Act, and are not subject to judicial review. *See First Savings and Loan Association of the Bahamas, Ltd. v. Securities & Exchange Comm.*, 358 F.2d 358 (5th Cir. 1966). An order of the Board denying a request for reconsideration would be reviewable in the courts of appeals pursuant to section 9 of the Act. *See Investment Company Institute v. Board of Governors of the Federal Reserve System*, 179 U.S.App. D.C. 311, 551 F.2d 1270 (1977); *see also Kesinger v. Universal Airlines*, 474 F.2d 1127, 1132 (6th Cir. 1973).

The bank brought this action in the district court on the theory that the Board's order was void as a matter of law because the Board did not act on the bank's application within 91 days of the receipt of the complete record on the application. The bank alleged jurisdiction in the district court pursuant to 28 U.S.C. §§ 1331, 1361 and 2201 (1976), and section 10 of the Administrative Procedure Act, as amended, 5 U.S.C. §§ 701–706 (1976). The district court found it had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701 *et seq. Memphis Trust Co. v. Board of Governors of the Federal Reserve*

*System*, No. C–76–64 (W.D.Tenn., June 4, 1976), slip opinion at 3. The court held that non-statutory review of the Board's action was available under the general federal question jurisdictional section of Title 28, and, alternatively, that the Administrative Procedure Act provided an independent grant of subject matter jurisdiction.[9]

■ The district court erred in finding that it had subject matter jurisdiction over this action. General federal question jurisdiction under Title 28 of the United States Code is not available to the bank under the facts of this case. Non-statutory review of administrative action is available only in the absence of a specific statute authorizing review in a particular court.[10] Where Congress has provided an adequate procedure to obtain judicial review of agency action, that statutory provision is the exclusive means of obtaining judicial review in those situations to which it applies. *Whitney National Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 419–423, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965); *Macauley v. Waterman S. S. Corp.*, 327 U.S. 540, 543–545, 66 S.Ct. 712, 90 L.Ed. 839 (1946); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48–50, 58 S.Ct. 459, 82 L.Ed.2d 638 (1938); *Investment Company Institute v. Board of Governors of the Federal Reserve System, supra*, 551 F.2d at 1278–1280. Judicial review under the Administrative Procedure Act was also not available in the district court. That statute provides in pertinent part that "[t]he form of proceedings for judicial review is the special statutory review proceedings relevant to the subject matter in a court specified by statute" where such review is available and adequate. 5 U.S.C. § 703 (1976).

---

**9.** The Supreme Court subsequently determined that the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, are not to be interpreted as an implied grant of subject matter jurisdiction to review agency action in light of the 1976 amendments to 28 U.S.C. § 1331 eliminating the amount in controversy requirement as a prerequisite to the maintenance of an action against the United States or an agency thereof, or an officer or employee thereof acting in an official capacity. *Califano v. Sanders*, 430 U.S. 99, 104–107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

**10.** *See generally* Note, *Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals*, 88 Harv.L.Rev. 980 (1975).

■ This case is in substance if not in form a challenge to the Board's order of April 10, 1975. The exclusive means by which an aggrieved party may obtain judicial review of a Board order is by a petition to the appropriate court of appeals, filed within 30 days after the entry of the order. 12 U.S.C. § 1848 (1976). In *Whitney National Bank v. Bank of New Orleans & Trust Co., supra,* the Supreme Court held that issues raised by various state banks in an action commenced in federal district court against the Comptroller of the Currency to enjoin the formation of a new national bank should have been presented to the Board, with exclusive jurisdiction in the courts of appeals to review the Board's decision. 379 U.S. at 422, 85 S.Ct. 551. The Court further noted that the acquisition of an existing bank by a bank holding company was within the exclusive jurisdiction of the Board subject to judicial review in the courts of appeals. 379 U.S. at 419–420, 85 S.Ct. 551. *Cf. Investment Company Institute v. Board of Governors of the Federal Reserve System, supra,* (a petition to set aside a Board order promulgating regulations pursuant to section 4(c)(8) of the Act must be brought in the courts of appeals pursuant to 12 U.S.C. § 1848 and not in the district courts).

The bank's argument that this action is not a challenge to the Board's order within the meaning of section 9 is unpersuasive. This is not a case where the Board has failed to rule on an application by a bank holding company under section 4(c)(8) of the Act. Under those circumstances, after 91 days have passed from the submission of the complete record on the application to the Board, an action might be brought in the district court for a declaratory judgment that the application should be "deemed to have been granted" by the Board pursuant to section 4(c).[11] However, where the Board has ruled on an application, and the bank holding company considers the order to have been untimely, an action challenging the order should be brought in the appropriate court of appeals. Congress has designated the courts of appeals as the proper forum for adjudicating disputes which arise from the Board's administration of the Bank Holding Company Act. As the present case indicates, these disputes are not limited to the findings and conclusions of the Board on a specific application. They also involve the Board's policy decisions on how it will process bank holding company applications. As the discussion of the court in *Tri-State Bancorporation, supra,* indicates, the determination of the time limit within which the Board must act on an application requires weighing different policy concerns against the mandate of the statute. Congress has determined that this balancing shall be done in the first instance by the Board, itself, which sits to implement the Act, subject to judicial review in the courts of appeals. Considerations of Congressional intent, judicial economy and administrative efficiency militate in favor of holding that all challenges to Board orders under the Act, including challenges to the Board's jurisdiction to enter a denial order after the 91-day time period has run, should be brought in the courts of appeals, and not in the district courts.

A petition to set aside an order must be brought by a party with standing to challenge the order[12] within 30 days of its

11. If the Board failed to act on the bank's application, exclusive jurisdiction would not lie in the court of appeals as there would be no order for the court to review. If the Board issued a denial order after an action had been filed in the district court, the action should be transferred to the court of appeals within 30 days of the entry of the Board's order, or a separate action challenging the Board's order should be filed in the court of appeals and the action in the district court should be stayed or dismissed.

12. In *Blackstone Valley National Bank v. Board of Governors of the Federal Reserve System,* 537 F.2d 1146 (1st Cir. 1976), the court held that a "party aggrieved" within the meaning of 12 U.S.C. § 1848 was one who had participated in the proceedings before the Board. A party who had not appeared before the Board could

entry. The 30-day time limit promotes finality of Board determinations, conserves administrative resources, and protects the reliance interests of holding companies whose applications to engage in non-banking activity have been approved. *Investment Company Institute v. Board of Governors of the Federal Reserve System, supra,* 551 F.2d at 1280.

Litigants who file suit in the district court, when exclusive jurisdiction lies in the court of appeals, may not discover their mistake until after the 30-day limit has expired and may therefore be deprived of any opportunity to challenge an order . . . . But, at least from now on, this situation need never arise. If any doubt as to the proper forum exists, careful counsel should file suit in both the court of appeals and the district court or, since there would be no time bar to a proper action in the district court, bring suit only in the court of appeals. This suggestion is hardly unprecedented; the plaintiffs in *Whitney National Bank v. Bank of New Orleans, supra,* were able to protect their rights by following the double-filing procedure.

*Id.* The instant case was brought in the district court more than thirty days after the entry of the challenged order. We do not here decide what result would obtain if this action had been timely filed in the district court and subsequently transferred to this court after the thirty days had expired. Had this action been timely filed in this court, we would have had jurisdiction to determine whether to set aside the Board's order and hold that the bank's application to acquire Homeowners had been

granted as a matter of law. *North Lawndale Economic Development Corporation v. Board of Governors of the Federal Reserve System,* 553 F.2d 23 (7th Cir. 1977); *Tri-State Bancorporation, Inc. v. Board of Governors of the Federal Reserve System, supra.*

The judgment of the district court is reversed. This case is remanded with instructions to dismiss the complaint for lack of subject matter jurisdiction, without prejudice to the bank's right to request the Board to reconsider its order of April 10, 1975.

---

not petition the court to set aside the Board's order on the ground that the Board had failed to comply with the 91-day rule. The court in *Blackstone* specifically declined to rule on whether the 91-day time limitation could be waived by a party which had participated in the application proceeding before the Board, or by the Board itself. 537 F.2d at 1148. But by holding that a petitioner who had not participated in the proceedings before the Board could not challenge a denial order as being untimely under the statute, the court implied that action by the Board on an application within 91 days of the submission of the com-

plete record was not a jurisdictional prerequisite to the validity of a denial order. The Act provides, however, that an application "*shall* be deemed to have been granted" if not acted upon within 91 days of the submission of the complete record to the Board. (Emphasis added.) As the court noted in *Tri-State Bancorporation v. Board of Governors of the Federal Reserve System, supra,* "[t]he time limitation in the BHC Act is mandatory in the sense that the statute prescribes the effect of the Fed's failure to act, i. e., the application is deemed approved." 524 F.2d at 565–566.