**CITY OF TRENTON, Plaintiff,**

v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY and the Federal Insurance Administration, Defendants.**

**Civ. A. No. 81–72947.**

United States District Court,
E. D. Michigan, S. D.

Sept. 24, 1981.

**14**

C. Melvin Burley, Jr., Trenton, Mich., for plaintiff.

Francis L. Zebot, Asst. U. S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

The issue in this case is whether the court has jurisdiction to enjoin agencies of the United States Government from implementing and effectuating the program involving a flood insurance study and flood insurance rate maps promulgated for the City of Trenton. For the reasons stated in this memorandum opinion and order, this court holds that there is no jurisdiction.

Pursuant to the National Flood Insurance Act of 1968, Public Law 90–448, Title XIII, 42 U.S.C. § 4001, et seq., and the National Flood Insurance Regulations, 44 C.F.R. § 65, et seq., the Federal Insurance Agency ("FIA") transmitted a Flood Hazard Bound-ary Map to the City of Trenton on March 7, 1975. By letter of June 16, 1980, the Federal Insurance Administration issued proposed flood elevations for the Flood Hazard Boundary Map area. Pursuant to regulations, the city appealed and contested the flood boundaries, protesting the inclusion of some 150 homes in the floodplain. This contest was resolved by the agency, the appeal was denied, and the city was notified on February 17, 1981 of the agency action. Six months after this action was taken, on August 17, 1981, the plaintiff brought this action to enjoin the defendants from "effectuating" the program. The defendant challenges the power of the court to proceed because of the failure to invoke this court's jurisdiction within sixty days of the action taken on February 17, 1981.

*History and Operation of the Federal Insurance Program*

Following a recommendation by the President and a report by the Secretary of Housing and Urban Development, both urging the establishment of a national program of flood insurance, Congress enacted the National Flood Insurance Act of 1968, *as amended*, and the Flood Disaster Protection Act of 1973, *as amended*, 42 U.S.C. § 4001, *et seq.* The purpose of the acts is to distribute the burdens of paying flood losses equitably among those who would be protected by the insurance and among the general public, and to minimize future flood losses.

Pursuant to section 1360 of the 1968 Act, "FIA" first identifies floodplain areas and then establishes flood risk zones within these areas. The floodplain boundaries are first shown on a Flood Hazard Boundary Map ("FHBM"). The issuance of this map has several legal consequences: (1) communities that choose to participate in the National Flood Insurance Program ("NFIP") must enact basic floodplain ordinances [44 C.F.R. § 60.3(b) ]; (2) a community which chooses not to enact such an ordinance and therefore not to participate in the program is not eligible for federal assistance to acquire or build buildings in the floodplain [42 U.S.C. § 4106(a) ]; and (3) in a participat-

ing community, any conventional mortgage from a federally related institution (e.g., F.D.I.C.), secured by property in the floodplain, must be covered by flood insurance [42 U.S.C. § 4012(a)(b)].

Subsequent to the issuance of an "FHBM", a Flood Insurance Rate Map ("FIRM") is issued. This depicts the flood risk zones and has two additional legal effects: (1) it forms the basis for actuarial flood insurance rates for all new structures; and (2) it provides the basis for additional floodplain ordinances necessary for participation in the program. Once the "FIRM" becomes final and effective, all new construction must be elevated to the 100-year flood level [44 C.F.R. § 60.3(c)]. Any structure built prior to the effective date of the initial flood elevations or prior to December 31, 1974, may receive flood insurance at federally subsidized rates for the life of the structure. After the initial "FIRM" becomes effective, the insurance is available for existing structures at subsidized rates, but actuarial rates which reflect the real flood risk must be paid for any new construction. 42 U.S.C. § 4013, § 4014 and § 4015.

The 1968 Act authorizes the sale of federal flood insurance for real property and related personal property losses "arising from any flood occurring in the United States." 42 U.S.C. § 4011. As a condition for the sale of federal flood insurance within any community, however, the community must adopt and enforce the aforementioned floodplain management ordinance, in accordance with "FIA" regulations, to mitigate flood hazards within the floodprone areas of that community identified by FIA. 42 U.S.C. § 4012(c), § 4022, and § 4102. The minimum criteria for such ordinances, delineated in 44 C.F.R. § 60.3 (formerly 24 C.F.R. 1910.3), essentially require the community to establish a building permit system for the areas of special flood hazard by which the community polices all construction of new structures or substantial improvements of existing structures to assure their conformity with the safety standards established in "FIA's" regulations. Foremost among "FIA's" safety standards is the requirement that any new construction or substantial improvement in an area of special flood hazard be elevated to or above the flood elevations which "FIA" has determined for the area. 44 C.F.R. § 60.3(c).

*Jurisdictional Problem*

Section 4104(g) of Title 42 of the United States Code provides:

(g) Any appellant aggrieved by any final determination of the Secretary upon administrative appeal, as provided by this section, may appeal such determination to the United States district court for the district within which the community is located *not more than sixty days* after receipt of notice of such determination. The scope of review by the court shall be as provided by chapter 7 of title 5, United States Code. During the pendency of any such litigation, all final determinations of the Secretary shall be effective for the purposes of this title unless stayed by the court for good cause shown. (Emphasis added).

42 U.S.C. § 4104(g).

On February 17, 1981, the plaintiff was formally notified of the final base flood level elevation determination and that this final determination would become effective six months from that date. The formal notice specifically informed the plaintiff of the effect of the final determination and of the duties of the City to enact ordinances in conformity with the Act. The final determination notice was published in the Federal Register on April 8, 1981.

Although during the six month interim there was further correspondence instituted by the plaintiff between parties, this type of correspondence does not affect the finality of the determination by the Administration. Mere conversations between parties or efforts at conciliation cannot serve to alter the finality of such determinations.

■ The plaintiff did not file suit until a full six months after the issuance of the final flood elevation determination by the Federal Insurance Administration, which was issued on February 17, 1981. The sec-

tion just quoted indicates that the city could have appealed the adverse determination made by the agency to this court at any time during a sixty day period following February 17, 1981. The law is also explicit in its terms as to the standards to be used in consideration of such an appeal. Such an appeal was not taken within this period of time. Because the City of Trenton has failed to meet the statutory prerequisite, this court lacks subject matter jurisdiction over the case.

Congress has established a specific statutory scheme by which a community and its citizens may challenge the flood elevations determined . by FIA for the community. The legislative history of the 1973 Act reflects that the question of appeals received close scrutiny. In its report, the Senate Committee on Banking, Housing and Urban Affairs, which authored the language of 42 U.S.C. § 4104 as adopted by the Congress, stated in part:

> Section 110 of the bill [42 U.S.C. § 4104), dealing with appeals, was the subject of more testimony, discussion, coordination, and committee debate than any other provision of the bill.
>
> \*   \*   \*   \*   \*   \*
>
> The amendment [to the 1968 Act] is very explicit and its provisions constitute a compromise worked out by the primary interested parties. (S. Report No. 93–583, pp. 15–16, U.S.Code Cong. & Admin. News 1973, p. 3217).

It is clear to the court that in cases of this kind a time period for the exercise of appellate rights is an important aspect of the full implementation of the program. It is well established that Congress in authorizing review of administrative action may place such conditions on that review as it deems proper. As the Supreme Court has stated:

> It can hardly be doubted that Congress, acting within its constitutional powers, may prescribe the procedures and conditions upon which ... judicial review of administrative orders may be had. *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 [78 S.Ct. 1209, 1218, 2

L.Ed.2d 1345] (1958). *Accord, American Power Co. v. SEC*, 325 U.S. 385, 389 [65 S.Ct. 1254, 1256, 89 L.Ed. 1683] (1945).

Similarly, the courts have repeatedly stressed that Congress in creating a right may decree its means of enforcement:

> Congress for reasons of its own decided upon the method for the protection of the right which it created. *It selected the precise machinery and fashioned the tool which it deemed suited to that end.*
>
> \*   \*   \*   \*   \*   \*

All constitutional questions aside, it is for Congress to determine how the rights which it creates shall be enforced. *Switchmen's Union v. NMB*, 320 U.S. 297, 301 [64 S.Ct. 95, 97, 88 L.Ed. 61] (1943). (Emphasis supplied.) *Accord, Cell Associates v. National Institute of Health*, 579 F.2d 1155, 1159 (9th Cir. 1979).

Where Congress has provided an adequate procedure to obtain judicial review of agency action, the statutory provision is the exclusive means of determining judicial review in those situations to which it applies. *Whitney National Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 419–423, 85 S.Ct. 551, 556–59, 13 L.Ed.2d 386; *Memphis Trust Co. v. Bd. of Governors of Federal Reserve*, 584 F.2d 921, 925 (6th Cir. 1978).

The facts in *Memphis* parallel those in the present case. Plaintiff bank went through an administrative process and received a final agency determination. There, as in the present case, there was an adequate procedure to obtain judicial review of the agency action. In both cases, there is a time limit imposed by the statutory provision granting jurisdiction—in *Memphis* it was 30 days—in the instant case it is 60 days. In both cases, plaintiff failed to bring suit within the required time period. The court in *Memphis* also noted public policy concerns behind imposing a 30-day time limit, explaining that it promotes finality of administrative determinations and conserves administrative resources (584 F.2d at 927).

The City of Trenton has failed to meet the conditions established by Congress for administrative and judicial review of FIA's flood elevation determination. Where a party fails to meet the statutory prerequisites for judicial review of administrative action, the court lacks subject matter jurisdiction to hear the case. Accordingly, this court lacks subject matter jurisdiction and the case is dismissed.

So ordered.